**Delores CHELF, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45A04–8807–CR–226.

Court of Appeals of Indiana, Fourth District.

Nov. 30, 1988.

June D. Oldham, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Defendant–Appellant Delores Chelf (Chelf) appeals a sentence imposed upon her plea of guilty to six counts of forgery. Each is a class C felony. IND.CODE 35–43–5–2.

We remand with instructions.

Chelf raises two issues. We consolidate and rephrase them as:

whether the sentence imposed was manifestly unreasonable in light of the nature of the offense and the character of the offender.

On June 10, 1983, Chelf pled guilty to six counts of forgery. (R. 41, 79–101). The information alleged Chelf, with intent to defraud Sentle Trucking Co. (Company), wrote and cashed six checks totalling $2,197. (R. 10–16). On July 6, 1983, Chelf was sentenced to five years upon each count, the sentences to be served consecutively. (R. 43–44, 86).

Before sentencing, the court heard testimony about the amount of money Chelf had taken from Sentle. Chelf was a partner in P & D Trucking. Chelf and P & D Trucking were agents of the Company, and Chelf was authorized to write checks upon Sentle's account. Chelf admitted the facts of each charged offense. (R. 84–95, 130).

Jesse Sentle (Jesse) of Sentle Trucking testified he had reviewed P & D's records. In sum, Jesse testified Chelf's was a complicated scheme involving falsification of more than 2,000 documents, involving nearly $400,000 worth of business, which resulted in a net uninsured loss to his business of $183,125.92. (R. 156–162, 167–168). Jesse testified Chelf's brother prepared some of the phoney documents, but the brother did not know what Chelf was doing. (R. 163). Jesse asserted all of the money could not be accounted for in the P & D business records. (R. 164). Jesse testified he had to sell part of the Company to meet payroll, and 25 truck drivers experienced trouble with the Internal Revenue Service because the documents Chelf forged showed earnings the drivers had not received. (R. 162–163).

Responding to counsel's questions, Chelf denied the amount she had taken was nearly $200,000 (R. 130), although her counsel erroneously characterized the six counts as totalling that amount when he questioned Chelf's character witnesses. (R. 110, 111–112, 121). Chelf calculated the amount actually taken from Sentle as $49,935.90. (R. 131). Chelf denied others were involved (R. 134–136, 143), but testified she asked her niece to make telephone calls necessary to the scheme, (R. 144) and used the name of another company with its permission. (R. 149–150). Chelf said all of the money taken went into P & D Trucking.

The prosecutor argued others must have been involved due to the complexity of the scheme. (R. 182–183).

Following argument the court said:

Mrs. [sic] Chelf, the State is right. There is One Hundred and Eighty Thousand Dollars out there somewhere. There is no way you could have spent that amount of money on what you described as for the agency office....

... Also impressed with the complexity of the scheme. Impressed with the amount of paper work and the total amount of dishonesty that had to be employed in order to pull that off. I am also convinced there are more people involved.

.    .    .    .    .

So I am going to give you sometime in prison to think over the rest of your life to see whether or not your life is worth your silence with them.

(R. 184–186).

On its docket, the court noted:

The sentences of imprisonment shall run consecutively for the following reasons: these six (6) counts represented only a fraction of the loss to the victim which amounted to approximately one hundred eighty dollars ($180.00) [sic], creating loss of jobs of other drivers in the victim's company.

(R. 43).

The court imposed the presumptive five year sentence on each count, to be served consecutively, and set the sentence for re-consideration to "see if [her] attitude [had] changed at all." (R. 186–187).

The court reviewed Chelf's sentence on December 14, 1983, and let it stand. (R. 46). On June 25, 1987, Chelf, under Ind. Rules of Procedure, Post–Conviction Rule 2, filed a Petition for Permission to File a Belated Motion to Correct Error. The petition was granted without a hearing and without findings. (R. 62–65). Chelf's belated motion to correct error was denied without a hearing. (R. 68–75).

She appeals.

▉ We review imposition of sentences to determine whether they are manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Rules of Procedure, Rules for the Appellate Review of Sentences, Rule 2. A sentence is not manifestly unreasonable unless no reasonable person could find the sentence appropriate to the particular offense and offender. *Walker v. State* (1988), Ind., 527 N.E.2d 706, 711.

In addition to the testimony noted above, the court had before it a pre-sentence investigation report. (R. 190–196). The report noted Chelf was then 52 years old and had no criminal record.

▉ Upon review of this record we find, in light of the nature of the offense and the character of the offender, the imposition of six consecutive five year sentences is manifestly unreasonable. No reasonable person could find 30 years imprisonment appropriate for a 52 year old first offender upon conviction for forging checks totalling $2,197. The punishment is grossly out of proportion to the severity of the offenses for which Chelf was convicted. *Cf. Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, *trans. denied*. In *Cunningham*, we reversed the imposition of eight consecutive two year sentences for theft and five consecutive two year sentences for perjury where the theft and perjury sentences were to run concurrently with other sentences being served for a total continuous imprisonment of 16 years. We noted there the sentence imposed for the nonviolent of-

fenses was one usually reserved for rapists and armed robbers. Such is the case here.

Having determined no reasonable person could find the sentence appropriate to the particular offense and offender we must revise the sentence to make it appropriate. *Cunningham,* 469 N.E.2d at 8. Mindful of IND.CODE 35–38–1–7 (then IND.CODE 35–4.1–4–7) we note the following in aggravation:

1. The victim testified the scheme resulted in a net loss of more than $183,000 and involved complicated paper work.

2. Chelf calculated taking more than $59,000.

In mitigation, we note the following:

1. Chelf was 52 years old with no prior criminal record at the time of trial.

2. The offense neither caused nor threatened serious physical harm to anyone and Chelf did not contemplate it would cause such harm.

3. Chelf testified she took the money because her business had "gotten bad" and "all the bills paid up were backed up, and everybody was screaming for money. [She] got backed into a corner." (R. 132). These are circumstances unlikely to recur.

4. Chelf had no history of delinquency or criminal activity and, until this event, led a law abiding life.

5. Chelf acknowledged the offense, noted there was no excuse for it, then pled guilty.

6. Chelf had been working and had been self-supporting since age 17. (R. 192, 194).

7. The pre-sentence investigation characterized Chelf as "genuinely remorseful[.]"

We note Chelf is imprisoned and has been since imposition of sentence in 1983. Accordingly, we revise Chelf's sentences as follows:

1. The five year presumptive sentence for each count shall run concurrently, rather than consecutively, from the date of sentencing.

2. Time served by Chelf from the date of her first incarceration to the date of this opinion shall be credited against the five years total punishment imposed.

Remanded to the trial court for resentencing consistent with this opinion.

MILLER and NEAL, JJ., concur.