**Bradley J. CATT, Appellant–
Defendant/Petitioner,**

**v.**

**STATE of Indiana, Appellee–
Plaintiff/Respondent.**

**No. 42A05–0007–PC–274.**

Court of Appeals of Indiana.

June 12, 2001.

Rehearing Denied August 16, 2001.

William E. Daily, Danville, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

*STATEMENT OF THE CASE*

Appellant–Defendant/Petitioner, Bradley J. Catt (Catt), appeals the sentence imposed on him by the trial court and the trial court's denial of his Motion for Modification or Reduction of Sentence. Catt also appeals the post-conviction court's denial of his Second Amended Petition for Post–Conviction Relief.

We affirm.

*ISSUES*

Catt raises five issues on appeal, which we expand and restate as follows:

1. Whether the trial court used inappropriate aggravating factors in sentencing him.

2. Whether his sentence is manifestly unreasonable.

3. Whether Counts 3 and 6 in Cause Number 42D01–9703–CF–5 constitute a single episode of criminal conduct.

4. Whether the trial court abused its discretion in refusing to modify or reduce his sentence.

5. Whether the post-conviction court erred when it denied his Second Amended Petition for Post–Conviction Relief without addressing his claim of error in the initial court assignment of his case.

6. Whether the post-conviction court erred when it refused to permit him to depose or call two judges as witnesses.

*FACTS AND PROCEDURAL HISTORY*

The facts relevant to our disposition are as follows. Pursuant to a plea agreement, on August 7, 1997, Catt pled guilty to one count of forgery, a Class C felony, Ind. Code § 35–43–5–2, and one count of theft, as a Class C felony, Ind. Code § 35–43–4–2, under Cause Number 42D01–9610–CF–48 (CF–48). On that same day, also pursuant to a plea agreement, Catt pled guilty to three counts of forgery, Class C felonies, Ind. Code § 35–43–5–2, and fourteen counts of theft, as Class D felonies, Ind. Code § 35–43–4–2, under Cause Number 42D01–9703–CF–5 (CF–5).

On December 19, 1997, a sentencing hearing was held. The trial court found the following aggravating circumstances and mitigating circumstances under both CF–48 and CF–5:

The court now finds aggravating circumstances in that the imposition of a reduced sentence would depreciate the seriousness of the crimes; several victims were less than twelve years age; at least one victim was physically infirm; the defendant's crimes have cast dispersions [sic] on the entire legal profession; the defendant was in a position of trust with each of his victims; the impact on four of the victims has been financially devastating; his criminal activity spanned a period of three and a half years; the amount of money involved and not repaid is substantial, approximately $671,000.00; the defendant was an elected official, in fact, Prosecutor, when at least some of the crimes were committed; and he is in need of correctional treatment that can best be provided by commitment to a penal facility. The court finds mitigating circumstances in that the defendant has no prior history of criminal activity; he appears to be remorseful in that he came to court and acknowledged his guilt. The court finds that the aggravating circumstances outweigh the mitigating circumstances and that these factors support both the enhancement of some of the terms of imprisonment to be imposed as well as consecutive sentences. The purpose that will be served by this sentence is two fold, one is retribution, which means punishment, and the second is deterrence to deter any member of the Bar from interfering with people's trust accounts that are entrusted to them.

(T.R.[1] 45 & 141).

Under CF–48, the trial court sentenced Catt as follows:

The court now sentences the defendant, Bradley John Catt, on Count 1, Forgery,

---

1. There are two (2) records in this cause. One being the trial record, which will be denoted by "T.R." The other being the post-conviction relief record, which will be denoted by "P.C.R."

a Class C felony, to the Indiana Department of Correction for a consecutive term of 4 years and sentences on Count 2, Theft, a Class C felony, to a consecutive term of 3 years. The court now advises the defendant that he is sentenced for not less than the earliest possible release date and not more than the maximum possible release date. Pursuant to the plea agreement said sentence shall be served concurrently with the 18 month federal sentence the defendant received.

(T.R. 45). Catt was also ordered to pay restitution.

Under CF–5, the trial court sentenced Catt as follows:

The court now sentences the defendant, Bradley John Catt, on Count 1, Forgery, a Class C felony, to the Indiana Department of Correction for a consecutive term of 8 years; sentences on Count 2, Forgery, a Class C felony, to the Indiana Department of Correction for a consecutive term of 4 years; sentences on Count 3, Forgery, a Class C felony, to a consecutive term of 4 years; sentences on Count 4, Theft, a Class D felony, to a consecutive term of 3 years; sentences on Count 5, Theft, a Class D felony, to a consecutive term of 1 ½ years; sentences on Count 6, Theft, a Class D felony, to a consecutive term of 1 ½ years; sentences on Count 7, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 8, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 9, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 10, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 11, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 12, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 13, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 14, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 15, Theft, a Class D felony, to a concurrent term of 1 ½ years; sentences on Count 16, Theft, a Class D felony, consecutive term of 3 years and sentences on Count 17, Theft, a Class D felony, consecutive term of 3 years. The court now advises the defendant that he is sentenced for not less than the earliest possible release date and not more than the maximum possible release date. Pursuant to the plea agreement said sentence shall be served concurrently with the 18 month federal sentence the defendant received.

(T.R. 141 & 142). Catt was also ordered to pay restitution.

Trial counsel filed a praecipe in both causes on January 8, 1998. Appointed appellate counsel filed a praecipe in both causes on January 15, 1998.

On January 20, 1998, Catt filed a *pro se* Motion to Correct Errors. He also filed a *pro se* Request for Entry of Ex–Parte Communications; Request for Entry of Non–Party Communications. Appellate counsel filed a praecipe from the deemed denied Motion to Correct Errors on March 18, 1998.

On June 16, 1998, Catt petitioned this court to consolidate both causes into a single appellate cause and record. Catt's petition was granted on June 23, 1998.

On September 22, 1998, Catt filed with this court his Verified Application for Leave to Remand Appeal to the Trial Court for Post–Conviction Relief Proceedings. This Application was granted on September 30, 1998.

On December 16, 1998, Catt filed a *pro se* Motion for Modification or Reduction of Sentence.

On March 17, 1999, Catt, by appointed counsel, filed a Petition for Post Conviction Relief. An Amended Petition for Post–Conviction Relief was filed on July 12, 1999. On January 12, 2000, Catt, *pro se*,[2] filed his Second Amended Petition for Post Conviction Relief. In his Second Amended Petition for Post Conviction Relief, Catt alleged, among other things, that: 1) The selection of the special judge in this case was not made in conformity with the Knox County local rules for selection of special judges, nor with Ind.Crim. Rule 13. 2) His total sentence of 35 years is manifestly unreasonable. Within this argument, Catt argued that his sentence was based upon improper aggravating factors, such as: (a) sending a message, and (b) the publicity surrounding this case. Additionally, Catt asserted that this was a case of a single episode of criminal conduct. 3) The trial judge, the Honorable Elaine B. Elliott, engaged in undisclosed inappropriate *ex parte* communications.

On March 30, 2000, a hearing was held on Catt's Second Amended Petition for Post–Conviction Relief and on his Motion for Modification or Reduction of Sentence. On May 31, 2000, the post-conviction court entered its Findings of Facts, Conclusions of Law and Judgment in Regard to the Petition for Post–Conviction Relief and Motion for Modification of Sentence. The court denied Catt's Second Amended Petition for Post–Conviction Relief and denied his Motion for Modification or Reduction of Sentence.

Catt now appeals.

### DISCUSSION AND DECISION

Initially, it should be noted that Catt and the State have differing viewpoints on the standards of review that are to be applied to the various issues in this case. This court granted Catt's Verified Application for Leave to Remand Appeal to the Trial Court for Post–Conviction Relief Proceedings. We granted Catt's Application under *Davis v. State*, 267 Ind. 152, 157, 368 N.E.2d 1149, 1151 (1977), in which our supreme court held:

that where an appellant from a criminal conviction seeks to bring a petition for post-conviction relief pending resolution of his appeal, he may obtain leave from the appellate court under the procedure outlines in *Logal* [*v. Cruse*, 267 Ind. 83, 368 N.E.2d 235 (1977) ] when the appellate court can find:

(1) that the grounds for relief advanced in appellant's petition have a substantial likelihood of securing appellant relief in the trial court;

(2) that such relief has a substantial likelihood of rendering moot the issues raised on direct appeal and would effect a net savings of judicial time and effort;

(3) that the circumstances of the case are such that undue hardship would result to appellant were he required to await completion of his appeal to petition for post-conviction relief.

To the extent that these criteria are more stringent than those imposed on civil litigants in *Logal*, they are imposed because of the differences between Rule 60(B) and Post–Conviction Rule 1 discussed above.

*Davis* does not stand for the proposition that a defendant may pick and choose which standard of review to apply when he is utilizing a direct appeal and a post-conviction relief appeal simultaneously. Therefore, if Catt raised an issue in his Second Amended Petition for Post–Convic-

---

**2.** On November 9, 1999, Catt filed a petition to proceed *pro se*. This petition was granted on December 2, 1999.

tion Relief, we will apply a post-conviction relief standard of review.

## I. *Aggravating Factors*

Catt argues that three of the ten aggravating factors used in sentencing him were improper. Specifically, Catt asserts that the following aggravating factors found by the trial court were improper:

> the imposition of a reduced sentence would depreciate the seriousness of the crimes; ...the defendant's crimes have cast dispersions [sic] on the entire legal profession; ...and he is in need of correctional treatment that can best be provided by commitment to a penal facility.

(T.R. 45 & 141).

### A. *Standard of Review*

In *Sims v. State*, 585 N.E.2d 271, 272 (Ind.1992), our supreme court held the following:

> Our standard of reviewing a sentence is well established. Sentencing is conducted within the discretion of the trial court and will be reversed only upon a showing of a manifest abuse of that discretion. It is within the discretion of the trial court to determine whether a presumptive sentence will be increased or decreased because of aggravating or mitigating circumstances. A sentence authorized by statute will not be revised except where the sentence is manifestly unreasonable.... When a sentencing court enhances a presumptive sentence, the record "must demonstrate that the determination was based upon the consideration of the facts of the specific crime, the aggravating and mitigating circumstances involved, and the relation of the sentence imposed to the objectives which will be served by that sentence." The trial court's statement must identify all significant mitigating and aggravating circumstances, include a specific reason why each circumstance

is mitigating or aggravating, and weigh mitigating circumstances against the aggravating factors.

*Id.* (citations omitted).

### B. *Depreciate the Seriousness*

■ Catt maintains that "the imposition of a reduced sentence would depreciate the seriousness of the crimes" cannot be used as a basis for enhancing a sentence. (T.R. 45 & 141). We agree.

In *Gregory–Bey v. State*, 669 N.E.2d 154, 159 (Ind.1996), our supreme court held:

> the Indiana Code also allows a trial court to consider as an aggravator the possibility that a reduced sentence might depreciate the seriousness of a crime. This factor cannot be used, however, as the basis for a sentence enhancement; it "may be used only when considering the imposition of a sentence of shorter duration than the presumptive sentence."

*Id.* (citations omitted).

■ As both Catt and the State agree, it does not appear that the trial court was considering a sentence shorter than the presumptive in this case. Therefore, we find the trial court's use of this aggravator to be improper. (*But see Ajabu v. State*, 722 N.E.2d 339, 343 (Ind.2000) (Our supreme court held that it is proper to consider as a non-statutory aggravating factor the fact that a sentence less than the *enhanced sentence* would depreciate the seriousness of the crime.)). However, we should note that when a trial court improperly applies an aggravating circumstance, a sentence enhancement may still be upheld if other valid aggravating circumstances exist. *Hackett v. State*, 716 N.E.2d 1273, 1278 (Ind.1999).

### C. *In Need of Correctional Treatment*

Catt also asserts that the trial court failed to provide a statement as to why it believed he was in need of correctional treatment that could best be provided by commitment to a penal facility in excess of the presumptive sentence. In *Hollins v. State*, 679 N.E.2d 1305, 1308 (Ind.1997), our supreme court held that a "trial court must provide a specific or individualized statement of the reason why this defendant was in need of correctional and rehabilitative treatment that could best be provided by a period of incarceration in a penal facility in excess of the presumptive sentence term."

■ It is true that the trial court failed to provide a specific statement as to the reason why Catt was in need of correctional treatment that could best be provided by commitment to a penal facility. However, while explaining that the aggravating factors outweigh the mitigating factors and that the aggravating factors support enhancement of some of the terms of imprisonment, the trial court stated:

> The purpose that will be served by this sentence is two fold, one is retribution, which means punishment, and the second is deterrence to deter any member of the Bar from interfering with people's trust accounts that are entrusted to them.

(T.R. 45 & 141). Additionally, in *Becker v. State*, 695 N.E.2d 968, 974 (Ind.Ct.App. 1998), this court held:

> when the record indicates that the trial court engaged in the evaluative processes but simply did not sufficiently articulate the reasons for the sentence imposed, then the reasons underlying the sentencing statement requirement have been fulfilled and there is no need for

the reviewing court to remand for a more specific sentencing statement.

Consequently, we find that the trial court engaged in the evaluative process and generally stated why Catt was in need of correctional treatment that could best be provided by commitment to a penal facility. Thus, we find that the trial court's use of this aggravator was proper.

### D. *Casting Aspersions* [3]

Finally, Catt contends that the trial court's use of his crimes casting aspersions on the entire legal profession as an aggravator was improper. Initially, we must note that Catt raised this issue in his Second Amended Petition for Post Conviction Relief. Therefore, it will be necessary to keep in mind the standard of review for post-conviction relief on appeal.

■ A post-conviction petition under Ind. Post Conviction Rule 1 is a quasi-civil remedy, and, as such, the petitioner bears the burden to prove by a preponderance of the evidence that he or she is entitled to relief. *Mato v. State*, 478 N.E.2d 57, 60 (Ind.1985); Ind. Post–Conviction Rule 1(5). On appeal from the denial of a petition for post-conviction relief, we neither reweigh the evidence nor judge the credibility of the witnesses. *Montano v. State*, 649 N.E.2d 1053, 1056 (Ind.Ct.App.1995), *trans. denied.* To prevail on appeal, the petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Spranger v. State*, 650 N.E.2d 1117, 1119 (Ind.1995), *reh'g denied.* It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that the decision will be disturbed as being contrary to law. *Id.* at 1120.

---

**3.** Although the trial court record states that Catt's crimes cast "dispersions" on the entire legal profession, we believe the trial court intended to use the term "aspersions."

Catt asserts that the purpose of this aggravator was to send a message to the members of the Bar to not interfere with trust accounts under their care. In *Beno v. State*, 581 N.E.2d 922, 924 (Ind. 1991), our supreme court held: "[w]e do not believe, however, that a trial judge should be allowed to use the sentencing process as a method of sending a personal philosophical or political message. A trial judge's desire to send a message is not a proper reason to aggravate a sentence."

While we agree that the trial court's use of this aggravator was improper, we do not find so because the trial court was attempting to send a personal, philosophical, or political message. Rather, we find that the aggravator was improper because it seems to be commentary on the trial court's finding that "the defendant was in a position of trust with each of his victims." (T.R. 45 & 141). Clearly, an attorney is placed in a position of trust with each and every client. The people who placed their trust in Catt were obviously damaged. Thus, to say that Catt's crimes cast aspersions on the entire legal community is not a false statement. However, as previously stated, it is commentary on the position of trust aggravator and not an appropriate separate aggravating factor.

### E. *Conclusion*

In his brief, Catt states that he has no quarrel with seven of the ten aggravators given by the trial court. When a trial court imposes an enhanced sentence, the trial judge must find at least one aggravator. *Morgan v. State*, 675 N.E.2d 1067, 1073 (Ind.1996). Though we found that the trial court inappropriately found two aggravating factors, we find this to be harmless error, because a sentence enhancement may still be upheld if other valid aggravating circumstances exist. *See Hackett*, 716 N.E.2d at 1278. The trial court found eight valid aggravating fac-

tors. Therefore, we do not find that the trial court abused its discretion in sentencing Catt through the improper use of aggravating factors. *See Sims*, 585 N.E.2d at 272.

### II. *Sentence Manifestly Unreasonable*

Next, Catt argues that the sentence imposed on him by the trial court is manifestly unreasonable. We must first note that Catt raised this issue in his Second Amended Petition for Post–Conviction Relief. Therefore, we will consider the post-conviction relief standard of review, which is stated above, along with the sentencing standard of review.

Sentencing decisions rest within the sound discretion of the trial court. *Singer v. State*, 674 N.E.2d 11, 13 (Ind.Ct. App.1996). This court will reverse only upon a manifest abuse of that discretion. *Id.* If the sentence is authorized by statute, it will not be revised or set aside, unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Id.* We must refrain from merely substituting our opinions for those of the trial court. *Id.*

In support of his position, Catt attempts to use other cases to demonstrate that his sentence is manifestly unreasonable. These include evangelist Jim Baker's forty-five year federal sentence for fraud and conspiracy charges involving 158 million dollars which was reversed on appeal, a corporate executive's nine year prison sentence for stealing 9 million dollars from his company, a Kentucky prosecutor's ten year sentence for forging court orders and stealing thousands of dollars from clients, and an attorney who received an eleven year sentence for duping clients out of thousands of dollars.

In further support of his position, Catt goes on to cite several Indiana cases.

In *Chelf v. State*, 530 N.E.2d 1201 (Ind. Ct.App.1988), the defendant was convicted of forgery and she appealed. This court held that six consecutive five-year sentences were excessive. Specifically, we held that 30 years imprisonment was inappropriate for a 52 year old first offender upon conviction for forging checks totalling $2,197. *Id.* at 1202. Additionally, we held that "[t]he punishment is grossly out of proportion to the severity of the offenses for which Chelf was convicted." *Id.*

Additionally, in *Cunningham v. State*, 469 N.E.2d 1 (Ind.Ct.App.1984), *reh'g denied, trans. denied,* this court held that eight consecutive two-year sentences for theft and five consecutive two-year sentences for perjury, for a total continuous imprisonment of sixteen years, was excessive.

We do not find Catt's comparisons to be so compelling as to find that his sentence is manifestly unreasonable. Catt pled guilty to four counts of forgery and fifteen counts of theft. In total, five Class C felonies and fourteen Class D felonies. He took and did not repay approximately $671,000.00 from twenty-seven different people. He financially devastated at least four of his victims. Even though Catt's crimes were not physically violent, they nonetheless caused irreparable emotional and financial damage to his victims. One of Catt's victims described the effect his crimes had on her as follows: "[t]he pain was such that it was a good thing I was in a nursing home. I went into a panic attack. I don't know what I would have done if I wasn't in a controlled environment. I was very frightened." (P.C.R. 1139).

It is our determination that the sentence imposed on Catt is appropriate to the particular offense and offender. *Singer,* 674 N.E.2d at 13; *see also Walker v. State,* 747 N.E.2d 536, 537–538 (Ind.2001).

Consequently, we find that Catt has not demonstrated that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Dewitt v. State,* 739 N.E.2d 189, 191 (Ind.Ct. App.2000), *reh'g denied.*

### III. *Single Episode of Criminal Conduct*

Catt asserts that Counts 3 and 6 in Cause Number CF–5 constitute a single episode of criminal conduct. This issue was raised in Catt's Second Amended Petition for Post–Conviction Relief. Therefore, we will consider the post-conviction relief standard of review along with Ind. Code § 35–50–1–2(c).

Ind. Code § 35–50–1–2(c) provides that:

except for crimes of violence, the total of the consecutive terms of imprisonment...to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code § 35–50–1–2(b) defines an episode of criminal conduct as "offenses or a connected series of offenses that are closely related in time, place and circumstance." In *Tedlock v. State,* 656 N.E.2d 273, 276 (Ind.Ct.App.1995), this court determined that "the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." *Id.* (quoting *State v. Ferraro,* 8 Haw.App. 284, 800 P.2d 623, 629 (1990)).

Under CF–5, Catt pled guilty to Count 3, a forgery charge, and stated:

I was representing the estate..the Truelove Estate and I stamped without permission a clerk's certification on a pleading and I knew at time that I didn't have permission to do it.

(P.C.R. 583).

Additionally, under CF–5, Catt pled guilty to Count 6, a theft charge, and stated:

I was representing...[the Truelove] estate. The money from the estate came in. I deposited it in my trust account. I used the money for purposes other than for that estate and deprived them the use of their money for a period of time without their permission.

(P.C.R. 56).

While it is true that these acts of criminal conduct involved the Truelove Estate, we do not find that the acts were so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge. *See Tedlock,* 656 N.E.2d at 276. In fact, Catt, himself, was able to account for each charge without referring to the details of the other charge. Thus, Catt has failed to demonstrate that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *See Spranger,* 650 N.E.2d at 1119.

### IV. *Sentence Modification*

It is Catt's contention that the trial court erred in denying his Motion for Modification or Reduction of Sentence. We disagree.

Ind. Code § 35–38–1–17(a) provides:

(a) Within three hundred sixty-five (365) days after:

(1) the defendant begins serving his sentence;

(2) a hearing at which the defendant is present and of which the prosecuting attorney has been notified; and

(3) obtaining a report from the department of correction concerning the defendant's conduct while imprisoned;

the court *may* reduce or suspend the sentence. The court must incorporate its reasons in the record.

*Id.* (emphasis added).

 Catt argues that he is entitled to a modification or reduction of sentence. In support of his argument, Catt asserts the following: 1) his assets have gone to pay restitution in his federal case; 2) he has paid out of his prison salary some restitution to his state victims; 3) while in federal prison, he worked as a tutor for GED classes and eventually ran the prison law library; 4) while in state prison, he has participated in religious programs and has helped tutor inmates; 5) he intends to make further restitution, but is unable to make significant payments while incarcerated for a lengthy period of time; and 6) because he is a former prosecutor, he is in danger from other inmates and this cannot be fully alleviated by the Department of Correction unless he is given a lesser sentence which would permit the Department of Correction to lower his security classification.

 A trial court's decision to reduce or suspend a sentence is discretionary. *Marshall v. State,* 563 N.E.2d 1341, 1343 (Ind.Ct.App.1990), *trans. denied.* The mere fact that the process of rehabilitation may have started does not compel a reduction or other modification in sentence. *Id.* at 1343–1344. The evidence presented by Catt indicates that he has started the process of rehabilitation, however, this evidence does not compel a reduction or other modification in sentence. Furthermore, as discussed above, we found that Catt's sentence is not manifest-

ly unreasonable; we also found that the trial court properly enhanced his sentence. Accordingly, we do not find that the trial court abused its discretion in denying Catt's Motion for Modification or Reduction of Sentence.

### V. *Initial Court Assignment*

Catt argues that the post-conviction court erred in denying his Second Amended Petition for Post–Conviction Relief. Specifically, Catt asserts that the Knox County local rule governing the assignment of criminal cases was not followed in his case and that the post-conviction court failed to address evidence of such.

Judge Elaine B. Elliott was appointed as special judge in this case. On December 20, 1996, the Knox Superior Court filed the following Entry:

> The parties agree by counsel and Judge-elect W. Timothy Crowley agree that Judge-elect Crowley may have a conflict of interest in presiding over this case due to his former representation of members of the defendant's immediate family. *The State and the defendant agree that a change of venue from the judge is necessary and further agree upon the Honorable Elaine B. Elliott as Special Judge.* The Court, after consulting with Judge Elliott finds that she is willing to accept this special judgeship. The Court now orders that the Honorable Elaine B. Elliott, upon her formal acceptance, be appointed as Special Judge in this case.

(T.R. 31) (emphasis added).

Additionally, at the hearing on his Second Amended Petition for Post–Conviction Relief, Catt submitted the Knox County local rule governing the assignment of criminal cases into evidence. The rule states that court assignment in criminal cases shall be selected randomly. Catt presented evidence which revealed that the court assignment in his case was not selected randomly. However, on cross-examination, Catt was asked if he was familiar with the Knox County local rule at the time his first charge was filed. He stated that he was. He further acknowledged that neither he nor his attorney ever filed an objection to the selection.

In its Findings of Facts, Conclusions of Law and Judgment in Regard to the Petition for Post Conviction Relief, the post-conviction court held:

> The selection of Elaine Elliott was in compliance with the law of the State of Indiana as Special Judge because the parties agreed to the selection of Elaine Elliott as Special Judge in all causes of this case.

(P.C.R. 673). The post-conviction court also held:

> The defendant's rights were in no way limited nor was he denied due process of law in the selection of the Special Judge Elaine Elliott since the defendant agreed upon her.

(P.C.R. 674).

"[A] party may not invite error and then rely on such error as a reason for reversal, because error invited by the complaining party is not reversible error." *Berry v. State,* 574 N.E.2d 960, 963 (Ind. Ct.App.1991), *reh'g denied, trans. denied.* Furthermore, in *Bivins v. State,* 485 N.E.2d 89, 92 (Ind.1985), our supreme court held that where a defendant does not object to an irregularity in the appointment of a special judge, he accepts the appointment, submits to the jurisdiction, and waives the irregularity.

Accordingly, because Catt was aware of the Knox County local rule and failed to object to any irregularity in the appointment of Judge Elliott, as special judge, we find that he accepted the appointment,

submitted to the court's jurisdiction, and waived any irregularity. *See id.* Therefore, it is our determination that the post-conviction court did not err in denying Catt's Second Amended Petition for Post–Conviction on the issue of initial court assignment.

## VI. *Judges as Witnesses*

Finally, Catt argues that the post-conviction court erred in prohibiting him from presenting testimony from judges in support of his claims. In his Second Amended Petition for Post–Conviction Relief, Catt raised issues of irregularity in the initial court selection and *ex-parte* communications. Catt asserted that in order to support his claims for these issues, he required the deposition testimony or trial testimony of Judge Crowley and/or Judge Elliott. The State objected to any such testimony; and the post-conviction court refused to compel Judge Crowley or Judge Elliott to provide testimony at the post-conviction proceedings.

Catt wanted to elicit testimony from Judge Crowley about his knowledge of the Knox County local rule regarding court selection. We find that it is unnecessary to discuss Judge Crowley and testimony he may have given concerning the Knox County local rule, because, as stated above, Catt waived any irregularity of the initial court selection.

■ Additionally, Catt wanted to elicit testimony from Judge Crowley and/or Judge Elliott regarding alleged *ex-parte* communications. It is Catt's contention that Judge Crowley asked Judge Elliott not to have Jim Brewer (Brewer), the Chief Probation Officer of Knox County, make a sentencing recommendation. The Knox County Probation Department did not make a sentencing recommendation. Therefore, Catt maintains that he was denied the benefit of a sentencing recommendation from the probation department.

At the post-conviction hearing, Brewer testified that he asked Judge Crowley to speak with Judge Elliott and inquire as to whether Judge Elliott would have a problem with him not making a sentencing recommendation in this case. Brewer testified that he did not feel comfortable making a sentencing recommendation because he had a friendship with Catt.

Ind. Judicial Conduct Canon 2(B) states that "[a] judge shall not testify voluntarily as a character witness." The commentary on this section provides:

> A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in support of the party for whom the judge testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

■ We agree with Catt that neither Judge Crowley nor Judge Elliott would have testified as character witnesses. Furthermore, it is not clear from the record why the post-conviction court refused to permit Judge Crowley and/or Judge Elliott to testify. However, we find that any error in refusing to make Judge Crowley and/or Judge Elliott testify was harmless error. "An error will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of a party." *Martin v. State,* 736 N.E.2d 1213, 1218 (Ind.2000).

The content and effect of what Catt characterizes as an improper *ex parte* com-

munication was before the post-conviction court through Brewer's testimony. Brewer did not make a recommendation as to an appropriate length of sentence because he felt that his friendship with Catt may have caused the appearance of bias.

We cannot find that the communication between Brewer and Judges Crowley and Elliott prejudiced Catt. As discussed above, we found that Catt's sentence is not manifestly unreasonable; we also found that the trial court properly enhanced his sentence. Consequently, we find that any error in disallowing the judges' testimony was harmless.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly sentenced Catt and properly denied his Motion for Modification or Reduction of Sentence. We also conclude that the post-conviction court properly denied Catt's Second Amended Petition for Post–Conviction Relief.

Affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.