**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ZACHARY BUZA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 61A05-1304-CR-149 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PARKE CIRCUIT COURT
The Honorable Sam A. Swaim, Judge
Cause No. 61C01-1207-FA-191

**January 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, Zachary Buza (Buza), appeals his conviction for Count I, attempted murder, a Class A felony, Ind. Code § 35-42-1-1; -41-5-1; Count III, attempted aggravated battery, a Class B felony, I.C. § 35-42-2-1.5; -41-5-1; Count V, criminal recklessness, a Class C felony, I.C. § 35-42-2-2; Count VI, criminal recklessness, a Class C felony, I.C. § 35-42-2-2, and Count VIII, battery resulting in bodily injury, a Class A misdemeanor, I.C. § 35-42-2-1.

We affirm.

ISSUES

Buza raises four issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the trial court abused its discretion in admitting evidence;

(2) Whether there is sufficient evidence to support Buza's attempted murder conviction; and

(3) Whether the trial court erred in sentencing Buza.

FACTS AND PROCEDURAL HISTORY

In July 2012, nineteen-year-old Buza lived in Rosedale, Indiana with his seventeen-year-old girlfriend, Abbi Lowe (Abbi), and her parents. On July 22, 2012, an unemployed Buza was hired to wash his friend's grandfather's fence. During the course of the day while he was washing the fence, Buza voluntarily consumed approximately a gallon of vodka, two beers, and a small amount of chocolate whiskey that he stole from his employer. Buza became so intoxicated that someone had to drive him home at approximately 1:30 that afternoon.

Abbi's father, forty-two-year-old Rodney Lowe (Lowe), who is disabled because of a heart condition, saw Buza stumble into the house. Lowe went to Abbi's bedroom, woke her up, and

2

told her that he thought Buza was intoxicated. Abbi subsequently found Buza passed out on the bathroom floor. She helped him to bed, and he began choking her. Lowe ran into his daughter's room and told Buza to leave the Lowes' house. When Buza threatened to kill Lowe, Lowe left the room to telephone the police and retrieve a baseball bat. On his way back to Abbi's bedroom, Lowe saw Buza push Abbi out of her bedroom and into the hallway. Buza then turned and charged Lowe, who hit Buza with the baseball bat. Buza grabbed Lowe by the waist and slammed him down on the floor. Buza ran into the bathroom while Lowe and Abbi ran to a neighbor's house.

Rosedale reserve officer Kevin Bratcher (Officer Bratcher) arrived at the scene and observed Lowe and Abbi fleeing to the neighbor's house. Shortly thereafter, Indiana State Trooper Michael Organ (Trooper Organ) arrived at the scene. Trooper Organ was in full uniform and drove a fully marked police car. While Officer Butcher was filling in for Trooper Organ, the Trooper saw Buza break a window from inside the house. The Trooper told Buza to show his hands and come outside. Buza, however, responded with obscenities and fired three shots at the Trooper and the Officer. The first shot hit the rear tire of Trooper Organ's car and flattened it. The third shot exited the front driver's side window and came so close to Trooper Organ's head that he was injured by glass and metal fragments. Buza surrendered after the Officer and the Trooper returned fire.

Parke County paramedic Rachel Harris and State Police Trooper Brandon Mullen accompanied Buza by ambulance to Union Hospital in Terre Haute. During the ride to the hospital, Buza remarked that had he done a better job of "sighting in his gun, the guy would have had three shots right between the eyes." (Transcript p. 337). Buza also said that he was aiming for the Trooper's head and that God must have been on the Trooper's side that day. Later, at the hospital, Buza stated that he should have shot the car's gas tank because the car would have blown up. At

3

8:30 p.m., Buza's blood alcohol content was .177. Buza was placed in the Parke County Jail later that night.

The following day, Buza's mother visited him at the jail. Inmates are warned before visitation that their telephone conversations will be recorded. During Buza's visit with his mother, Buza told her that he "punched a window out and shot at a cop." (State's Exh. 210A, p. 1). During a subsequent recorded visit, Buza told his mother that if he had to explain the shooting, he would say that he was trying to shoot Lowe for beating him with a baseball bat.

At approximately 3:00 p.m. on July 23, 2012, Indiana State Police Detective Chris Carter (Detective Carter) interviewed Buza at the jail. Buza did not appear intoxicated at that time. Detective Carter advised Buza of his *Miranda* rights, and Buza responded that he understood them. Buza told the Detective that after Abbi and her father left the house, Buza went to the gun room, grabbed his Mosin Ganant, busted out the bathroom window, and fired three rounds at the Officer and Trooper. Buza described the Mosin Ganant as a powerful Russian assault rifle that shoots steel-tipped armor piercing rounds that can penetrate an engine block. Buza further told Detective Carter that he was shooting closer and closer to the Trooper with every round.

On July 26, 2012, the State filed an Information charging Buza with Count I, attempted murder; Count II, attempted voluntary manslaughter; Count III, attempted aggravated battery; Count IV, attempted aggravated battery; Count V, criminal recklessness; Count VI, criminal recklessness; Count VII, strangulation; and Count VIII, battery resulting in bodily injury. At the five-day jury trial, which began on February 11, 2013, the trial court, over Buza's objections, admitted a recording of two conversations between Buza and his mother at the jail as well as his police statement to Detective Carter.

On February 15, 2013, the jury convicted Buza of Count I, attempted murder; Count III, attempted aggravated battery; Counts V and VI, criminal recklessness; and Count VIII, battery resulting in bodily injury. Following the March 15, 2013, sentencing hearing, the trial court found that Count III was a lesser included offense of Count I and sentenced Buza to an aggregate sentence of 40 years and six months with six years suspended to probation for Counts I, V, VI, and VIII.

Buza now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

*I.    Admission of Evidence*

Buza argues that the trial court abused its discretion in admitting his confession to Detective Carter and recordings of his jail visits with his mother into evidence at trial. We address each of his contentions in turn.

Buza first claims that the trial court erred in admitting his confession to Detective Carter. Specifically, he contends that the confession was not voluntarily given because he was "sleep deprived and under the influence of medication" at the time he gave the statement. (Appellant's Br. p. 18). The decision whether to admit a confession is within the discretion of the trial court judge and will not be reversed absent an abuse of that discretion. *Ringo v. State*, 736 N.E.2d 1209, 1211 (Ind. 2000). When reviewing a challenge to the trial court's decision to admit a confession, we do not reweigh the evidence but instead examine the record for substantial evidence of voluntariness. *Id.*

Coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Id.* A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation

5

tactics that have overcome the defendant's free will. *Id.* at 1212. The critical inquiry is whether the defendant's statements were induced by violence, threats, promises, or other improper influence. *Id.* at 1212-13. Here, Buza points to no evidence of violence, threats, promises, or other improper influence, and we find none. Therefore, the trial court did not err in admitting Buza's confession into evidence.[1] *See id.*

Buza also argues that the trial court abused its discretion in admitting into evidence recordings and transcripts of two visits between Buza and his mother. Specifically, Buza contends that the recordings were never authenticated under Indiana Evidence Rule 901.

Indiana Evidence Rule 901 provides that the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Absolute proof of authenticity is not required. *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), *trans. denied.* When evidence establishes a reasonable probability that an item is what it is claimed to be, the item is admissible. *Thomas v. State*, 734 N.E.2d 572, 573 (Ind. 2000). When a trial court makes a ruling concerning the sufficiency of the foundation laid to justify the admission of evidence, we review that decision for an abuse of discretion. *Id.*

Here, Buza objected when the State attempted to introduce recordings and transcripts of Buza's conversations with his mother during visitation at the jail. Parke County Sheriff's Department Detective Justin Cole explained that he obtained the recordings by logging on to the website of the telephone company that maintains electronic recordings of inmates' conversations with their visitors. He used jail visitor logs to find the specific recordings. The State further

---

[1] Buza has offered no authority or cogent argument in support of his cursory claim that the State's alleged failure to bring Buza promptly before the trial court for an initial hearing contributed to the involuntariness of his confession. He has therefore waived it. *See Minnick v. State*, 544 N.E.2d 471, 477 (Ind. 1989).

explained that the Parke County Sheriff's Department contracts with a phone company to run the jail phone system, and the Sheriff's Department has twenty-four hour access to it. All recordings are time stamped and searches can be done by date, time, and phone number. The State further pointed out that Buza was not challenging the accuracy of the records, and it was clearly "[Buza's] own statement that can be used against him." (Tr. p. 556). The trial court concluded that this evidence was sufficient to support a finding that the recordings and transcripts were what the State claimed, and we agree. Thus, the trial court did not abuse its discretion in admitting the recordings and transcripts into evidence.

## II.     *Sufficiency of the Evidence*

Buza next argues that there is insufficient evidence to support his conviction of attempted murder. Specifically, he contends that the "State failed to prove beyond a reasonable doubt Buza had the requisite intent to kill." (Appellant's Br. p. 24).

Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Perrey v. State*, 824 N.E.2d 372, 373 (Ind. Ct. App. 2005), *trans. denied*. We only consider the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the judgment, it will not be set aside. *Id.*

A conviction for attempted murder requires proof of specific intent to kill. *Spradlin v. State*, 569 N.E.2d 948, 950 (Ind. 1991). Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack, and the circumstances surrounding the crime. *Gall v. State*, 811 N.E.2d 969, 975 (Ind. Ct. App. 2004), *trans. denied*. Further, the Indiana Supreme Court has held that discharging a weapon

7

in the direction of a victim is substantial evidence from which the trier of fact could infer intent to kill. *Leon v. State*, 525 N.E.2d 331, 332 (Ind. 1988).

Here, our review of the evidence reveals that when Trooper Organ, who was dressed in police uniform and driving a fully marked police car, told Buza to come out of the house. Buza responded with obscenities and fired three shots at Trooper Organ and Officer Bratcher. The first shot flattened the tire on the Trooper's car, and the third shot came so close to Trooper Organ's head that he was injured by glass and metal fragments. In the ambulance on the way to the hospital, Buza remarked that had he done a better job of sighting his gun the Trooper would have had three shots between the eyes. He also admitted that he was aiming for the Trooper's head and felt that God must have been on the trooper's side that day. This evidence is sufficient to support Buza's intent to kill and his conviction of attempted murder. We affirm the trial court.

### III. Sentencing

The trial court sentenced Buza to 34 years for Count I, attempted murder, with four years suspended to probation and six years for Count V, criminal recklessness, with sentences to run concurrently. The trial court further sentenced Buza to six years for Count VI, criminal recklessness with two years suspended to probation and 180 days for Count VIII, misdemeanor battery, with sentences to run consecutively to each other and consecutively to the 34-year sentence for Count 1, for a total sentence of 40 years and six months with six years suspended to probation.

Buza now argues that the trial court abused its discretion in sentencing him. Specifically, he asks this Court to "reverse his sentence and impose concurrent advisory sentences totaling 30 years imprisonment, with eight years suspended to probation." (Appellant's Brief. p. 38).

The determination of a defendant's sentence is within the trial court's discretion. *Newman v. State*, 719 N.E.2d 832, 838 (Ind. Ct. App. 1999), *trans. denied*. An abuse of discretion occurs

if the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Guzman v. State*, 985 N.E.2d 1125, 1132 (Ind. Ct. App. 2013). One way in which a court may abuse its discretion is failing to enter a sentencing statement at all. *Id.* Other examples include finding aggravating or mitigating factors unsupported by the record, omitting mitigating factors clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Brock v. State*, 983 N.E.2d 636, 640 (Ind. Ct. App. 2013).

Here, the trial court found the following aggravating factors: 1) Buza was on probation for driving while intoxicated at the time he committed these offenses; 2) Buza received disciplinary write-ups while incarcerated in the county jail for these offenses; and 3) Buza disregarded his surroundings at the time of the offense because he was shooting a high powered rifle in the middle of town. The trial court also found that Buza's character was an aggravating factor because Buza lacked appreciation for the crimes he committed, was kicked out of school for burning another student's hair, had a child as a teenager without a high school degree or any kind of steady job or employment, lived with a teenaged girl in her father's house, and repaid his employer for the opportunity to work by stealing alcohol from him and drinking a "ridiculous amount" of it while on the job. (Sentencing Tr., p. 22). The trial court found that Buza's lack of significant criminal history was a mitigating factor. However, the trial court rejected Buza's proposed mitigating factor that he was intoxicated and had been hit in the head and was not thinking clearly because the trial court considered those actions to be the result of Buza's choice.

Buza first argues that the trial court abused its discretion by considering the following improper aggravating factors: 1) the nature and circumstances of the offense, and 2) Buza's character, which included his lack of appreciation of the wrongfulness of the offenses, living with

his seventeen-year-old girlfriend and her family, and becoming a father without his high school diploma or a steady job. We address each of his contentions in turn.

The nature and circumstances of the crime is a valid aggravating factor. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). Here, the trial court found that Buza "in the middle of town in the middle of Rosedale, right literally in the middle of town, used a high powered rifle and shot out a window toward the police and he's lucky that he didn't hit anyone else besides who he was aiming at." (Sent. Tr., p. 22). This was not an improper aggravating factor, and we find no error in the trial court's consideration of it.

Buza next argues the trial court erred in considering his character as an aggravating factor. However, even if a trial court finds an improper aggravating factor, a sentence enhancement may still be upheld if other valid aggravating factors exist. *Catt v. State*, 749 N.E.2d 633, 639 (Ind. Ct. App. 2001), *trans. denied*. Here, the trial court found three valid aggravating factors, two of which Buza does not challenge, including his prior criminal history and disciplinary write-ups in jail. Any error in the consideration of a fourth aggravating factor is therefore harmless. *See id.* (stating that trial court's improper consideration of two aggravating factors was harmless error where the trial court found other valid aggravating factors).

Buza further argues that the trial court should have considered his physical condition, including his extreme intoxication and head injury, as a mitigating factor. According to Buza, "he could not have known that drinking the alcohol would lead to events which resulted in the charges of attempting murder of a policeman." (Appellant's Br. p. 38). Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature,

weight, or significance. *Id.* The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001). Furthermore, while Indiana law mandates that the trial court not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

Voluntary intoxication at the time of an offense is not necessarily a mitigating factor. *Legue v. State*, 688 N.E.2d 408, 411 (Ind. 1997). Finding such circumstance to be mitigating may involve the consideration and evaluation of various factors, including the degree of intoxication and the defendant's culpability in the knowing and voluntary consumption of alcohol. *Id.* Here, our review of the evidence reveals that while Buza was on probation for driving while intoxicated, he voluntarily consumed a gallon of vodka, two beers, and some chocolate whiskey. He was so intoxicated that his blood alcohol content was .177 seven hours after he consumed the alcohol. Under these circumstances, the trial court did not err in failing to consider Buza's voluntary intoxication as a mitigating factor.

Lastly, Buza argues that his sentence is inappropriate. Pursuant to Indiana Appellate Rule 7(B), we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, this court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007). The defendant has the burden of persuading us that his sentence is inappropriate. *Id.*

With regard to the nature of the offenses, Buza stole alcohol from his employer, became extremely intoxicated on the job, attacked his girlfriend and her disabled father, who had allowed

11

Buza to move into the family's house, and then shot out the window at two law enforcement Officers in the middle of town, endangering the general public as well as the Officers.

With regard to the character of the offender, while on probation for driving while intoxicated, Buza voluntarily consumed a gallon of vodka, two beers, and some chocolate whiskey that he stole from his employer. He became so intoxicated that he had to be driven home in the middle of the afternoon. When he got there, he choked his girlfriend and slammed her disabled father on the floor. He then retrieved his high-powered rifle and shot three times at two law enforcement Officers. It is clear that Buza's prior contact with the law has not caused him to reform himself. Based on the foregoing, Buza's sentence was not inappropriate in light of the nature of the offense and the character of the offender.

Affirmed.

VAIDIK, C.J. and MAY, J. concur

12