Edward Graylin SALLEE,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 55A04–0202–CR–67.

Court of Appeals of Indiana.

Nov. 8, 2002.

R. Stephen Donovan, Mooresville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Edward Sallee was convicted following a jury trial of criminal deviate conduct and rape, both Class A felonies, sexual battery, a Class C felony, and criminal confinement, a Class D felony. He was sentenced to fifty years for the criminal deviate conduct conviction, fifty years for the rape conviction, and three years for the criminal confinement conviction, all to be served consecutively, for a total sentence of 103 years.[1] He now appeals his convictions and sentence. We affirm.

---

1. Sallee was not sentenced for the sexual battery conviction because the trial court found that it merged with the criminal deviate conduct and rape convictions.

## Issues

Sallee raises four issues for our review, which we restate as follows:

1. Whether the evidence is sufficient to support his convictions;
2. Whether the trial court properly excluded Sallee's proffered evidence regarding the victim's prior sexual history;
3. Whether Sallee's convictions and sentences for criminal deviate conduct, rape, and criminal confinement violate double jeopardy; and
4. Whether Sallee was properly sentenced.

## Facts and Procedural History

The facts most favorable to the jury's verdicts reveal that in the late morning of April 9, 2001, C.T. was at a gas station in Martinsville where she was approached by Sallee and wife, Sherry.[2] Sallee told C.T. that his car had broken down and offered her twenty dollars if she would give him and his wife a ride. After C.T. and an acquaintance exchanged hellos, C.T. agreed to give Sallee and Sherry a ride for no payment.

Sallee got into the back seat of C.T.'s car. Sherry rode in the passenger seat. C.T. drove until her passengers told her to pull over at a gravel road because they could walk from there. C.T. put the car in neutral, and Sallee grabbed her from behind and pulled her into the back seat with Sherry's help. C.T. screamed and kicked and managed to hit the car horn with her foot before Sallee was able to pull her into the back seat with him. Sherry got into the driver's seat, rolled up the windows, turned on the air conditioning and drove away. C.T. huddled in the back seat and told her passengers to take her money or

her car but to please drop her off. Sherry told C.T. to be quiet or she would hurt her. C.T. asked why they were doing this, and both Sallee and Sherry told her to be quiet or they would kill her.

Concerned that C.T. would be able to see where they were going, Sallee put a t-shirt over C.T.'s head and fastened it with duct tape around her neck. Both Sallee and Sherry told C.T. that if she did not do everything right, they would kill her. At some point, C.T. realized that she could see through the t-shirt. She observed that they were driving through a wooded area and that they stopped at a black and white house surrounded by trees. Sallee and Sherry took C.T. into the house and sat her on a bed. Sherry left to park the car and Sallee removed C.T.'s clothes. C.T. asked if they were going to rape her, and Sallee replied yes. He then put his mouth and tongue on her vagina and performed oral sex. C.T. did not try to run or otherwise fight because she was frightened, but she did cry, "No." When Sherry returned to the house, they removed the t-shirt from C.T.'s head and covered her eyes with duct tape.

In the approximately four hours that C.T. was with Sallee and Sherry, they forced her to perform or submit to various sexual acts. She was forced to perform oral sex on both Sallee and Sherry; both Sallee and Sherry performed oral sex on C.T., Sallee penetrated C.T.'s vagina with his penis; and Sherry used a sexual device to penetrate C.T.'s vagina. Sallee ejaculated twice; once on C.T.'s stomach and once on her face. In addition to the sexual acts, Sallee and Sherry forced C.T. to smoke and snort what they called "crank," which made C.T. feel sick to her stomach. C.T. complied with all of their requests

---

**2.** Sherry Sallee was also charged as a result of this incident. Sherry and Sallee were tried as co-defendants during the same jury trial. She, too, was found guilty as charged.

because she was afraid for her life; numerous times, Sallee and Sherry told her that if she saw anything or if she told anyone, they would kill her.

Sallee and Sherry gave C.T. her clothes back and when she was dressed, put her in the back seat of her car. They dropped her off at the side of the road and told her that her car would be in the Wal–Mart parking lot. They then drove away. C.T. pulled the duct tape off her eyes and began to walk toward town. C.T.'s roommate Adrian Bambery drove by and C.T. flagged her down. When C.T. told Adrian that she had been raped, Adrian took her to the police department to speak with police and then to the hospital, where doctors performed a physical examination.

Sallee and Sherry were arrested approximately one month after this incident. Sallee was charged with rape as a Class A felony, criminal deviate conduct as a Class A felony, sexual battery, a Class C felony, and criminal confinement, a Class D felony. Following a jury trial, Sallee was convicted of each of the charges and sentenced to a total of 103 years. He now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Sufficiency of the Evidence

Sallee first challenges the sufficiency of the evidence to support his convictions. He contends that the only evidence that the sexual activity was not consensual was C.T.'s own testimony and he further contends that is insufficient to find him guilty beyond a reasonable doubt.

### A. Standard of Review

■ The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. *West v. State*, 755 N.E.2d 173, 185 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

### B. Evidence of Charged Crimes

■ Sallee contends that C.T.'s testimony, as the only evidence of sexual activity by force, is "incredibly dubious" when compared to the physical evidence or lack thereof. The "incredible dubiosity" doctrine applies where a sole witness presents inherently contradictory testimony that is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt. *Thompson v. State*, 765 N.E.2d 1273, 1274 (Ind. 2002).

In support of his argument, Sallee cites to the DNA evidence. Sallee could not be excluded as a contributor to DNA on the shirt which was collected from C.T. during the sexual assault examination at the hospital. However, no DNA consistent with Sallee's was found on C.T.'s underwear, bra, socks, or in the vaginal or external swabs. Sallee contends that the only possible explanation for the lack of DNA evidence is that C.T. went home, showered, and changed clothes before she went to the hospital, which C.T. testified that she did not do, thus straining her credibility. Nonetheless, Sallee himself admitted at trial that he had sexual relations with C.T. The fact that sexual activity occurred or that it occurred between C.T. and Sallee was not at issue, and therefore the DNA evidence was not relevant to the determination of the ultimate issue: whether the sexual activity was consensual or compelled by force. C.T.'s testimony was not inherently contradictory; she consistently testified that she went straight to the police station and then to the hospital after

her roommate picked her up. Any inconsistencies between C.T.'s testimony and the physical evidence and the resultant effect upon her credibility were for the jury to reconcile.

Sallee also points to the testimony of the doctor who performed the physical examination of C.T. at the hospital that he observed no physical injuries and no dried semen on her body. He characterizes the doctor's testimony as asserting that he "saw nothing from his examination that would indicate a rape occurred or corroborate her story." Appellant's Brief at 7. The doctor testified that C.T. had fluid in the vaginal vault and redness at the vaginal opening, both of which could indicate recent sexual activity, but that he observed nothing out of the ordinary as far as abrasions or scrapes on her extremities. However, he also stated that:

> [w]hen I examine a patient, there's no way that I can say . . . a rape definitely occurred or a rape did not definitely occur in somebody that's . . . a sexually active person. . . . Sometimes you kind of have to rely on . . . on just what the patient tells me and the patient's demeanor and how the patient is acting. . . . In [C.T.'s] case I mean, again she was very upset. Her heart rate was rapid. She was obviously distressed. I don't have any reason to disbelieve her but to just say 100% for sure I know a rape occurred, I . . . I can't do that.

Tr. at 526–27. Thus, the doctor's testimony supports the fact that sexual activity had occurred, a fact upon which both C.T. and Sallee agree. His testimony does not conclusively support either side's version of *how* the sexual activity occurred. Any conflict between the doctor's testimony and C.T.'s is an issue of credibility for the jury to decide.

Finally, Sallee points to testimony from both C.T. and himself that C.T. was wearing a t-shirt with the sleeves cut off during the incident. However, the shirt that was collected from her during the sexual assault examination and that was introduced into evidence at trial did not match that description. Again, C.T. consistently testified that she was wearing a tank top during the incident. That the physical evidence contradicts this testimony does not make her testimony "incredibly dubious"; rather, it creates an issue of credibility for the jury to decide.

■ On the whole, the evidence is sufficient to support the convictions. Sallee himself testified to the sexual acts in which he engaged with C.T. C.T. testified that she was compelled to perform or submit to those sexual acts by threat of force because Sallee and Sherry told her that if she did not do everything right they would kill her. She was blindfolded throughout the incident and unable to see any weapon, but she believed that they could have one. A rape conviction may rest solely on the uncorroborated testimony of the victim. *Potter v. State*, 684 N.E.2d 1127, 1136 (Ind.1997). In this case, C.T.'s testimony was not wholly uncorroborated: Sallee himself confirmed the sexual contact, the acquaintance with whom C.T. had exchanged hellos at the gas station prior to her abduction testified consistent with C.T.'s recollection of events leading up to her giving Sallee and Sherry a ride, and C.T.'s roommate testified consistent with C.T.'s recollection of events after Sallee and Sherry dropped her off. Thus, we hold that the evidence was sufficient to support Sallee's convictions.

## II. Exclusion of Evidence

Sallee next contends that the trial court erred in excluding his proffered evidence regarding C.T.'s prior sexual history.

## A. Standard of Review

The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Brand v. State,* 766 N.E.2d 772, 778 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Prewitt v. State,* 761 N.E.2d 862, 869 (Ind.Ct.App.2002). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Brand,* 766 N.E.2d at 778.

## B. Sexual History Evidence

Indiana Rule of Evidence 412 provides:

(a) In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:

(1) evidence of the victim's or of a witness's past sexual conduct with the defendant;

(2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;

(3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or

(4) *evidence of conviction for a crime to impeach under Rule 609.*

*See also* Ind.Code § 35–37–4–4(a), (b).[3] In addition, the Rule delineates certain procedures that must be followed in order to introduce evidence allowed by the Rule, including a written motion and a hearing. Ind. Evidence Rule 412(b).

Sallee sought to introduce evidence to counteract the State's assertions that C.T. was sexually naïve and to attack her credibility. He proffered evidence that C.T. became sexually active at the age of fourteen and that she and her boyfriend had used a sexual device in their sexual activity. He also wished to introduce evidence that C.T. stated in a pre-trial deposition that she had last had sexual intercourse with her boyfriend "a couple of months" prior to this incident, but that her boyfriend testified in his deposition that it had been only a matter of days before. None of this evidence fits within one of the exceptions to Rule 412.[4] Nonetheless, he

---

**3.** The Rape Shield Statute, Ind.Code § 35–37–4–4, predates Evidence Rule 412. Rule 412, promulgated by our supreme court and effective January 1, 1994, embodies the basic principles of the Statute. However, to the extent there is any discrepancy between the two, the Rule controls. *Graham v. State,* 736 N.E.2d 822, 824–25 (Ind.Ct.App.2000), *trans. denied.* Thus, we will refer to the Rule in our discussion, as the parties did in their briefs.

**4.** In fact, the only evidence Sallee contends fits within a Rule 412 exception is evidence that C.T.'s boyfriend had purchased a sexual device for their use and that they had used it in their sexual activity. He contends that the boyfriend's purchase of the device was not conduct on the part of C.T. and thus not precluded by Rule 412. Appellant's Brief at 13 (citing *Zawacki v. State,* 753 N.E.2d 100, 103 (Ind.Ct.App.2001), *trans. denied,* which stated that letters written by the victim indicating a sexual interest in the defendant's daughter and her request that the defendant give her permission to have a sexual relationship with his daughter were written matter and verbal conduct that did not fall within the confines of the Rape Shield law). However, Sallee's offer to prove made it clear that he not only wanted to introduce evidence that the boyfriend had purchased a sexual device, but also that he and C.T. had used the device. We do not see how this can be considered anything other than evidence of prior sexual conduct by C.T.

contends that the trial court's failure to allow this evidence impacted his Sixth Amendment right to present a defense.

"Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes." *State v. Walton*, 715 N.E.2d 824, 826 (Ind.1999) (quoting *Williams v. State*, 681 N.E.2d 195, 200 (Ind.1997)). Indiana's Rape Shield Statute has repeatedly been found constitutional on its face so long as it does not violate a defendant's right to cross-examination. *Graham v. State*, 736 N.E.2d 822, 826–27 (Ind.Ct.App.2000), *trans. denied; Clark v. State*, 728 N.E.2d 880, 887 (Ind.Ct.App. 2000), *trans. denied* (citing *Steward v. State*, 636 N.E.2d 143, 147–48 (Ind.Ct.App. 1994), *aff'd*, 652 N.E.2d 490 (Ind.1995)). However, the constitutionality of the statute as applied to preclude specific exculpatory evidence must be examined on a case-by-case basis to assure that no violation of the right to cross-examination has occurred. *Graham*, 736 N.E.2d at 827.

Sallee makes no claim that the precluded evidence in this case was exculpatory, and indeed, he could not, given that he admitted to the sexual contact. Rather, he contends that the trial court's ruling prohibited him from adequately probing C.T.'s credibility. We disagree. We acknowledge that C.T.'s credibility was central to the State's case, as she was the only witness to say that the sexual contact was forced. However, Sallee vigorously attacked C.T.'s credibility throughout her testimony, comparing her testimony to the physical evidence or lack thereof, probing her financial situation,[5] and using her previous deposition testimony to impeach her. The evidence Sallee sought to introduce did not make her testimony that she was forced to submit to or perform sexual acts any more or less likely. Therefore, we hold that the trial court did not err in excluding this evidence pursuant to the Rape Shield law.[6]

### III. Double Jeopardy

Sallee contends that his convictions and sentences for rape, criminal deviate conduct, and criminal confinement violate our state constitution's prohibition against double jeopardy when analyzed under the "actual evidence test."

### A. Standard of Review

 To show that two challenged offenses constitute the same offense under the actual evidence test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind.1999). Application of the actual evidence test requires the reviewing court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective, considering where

---

**5.** It was Sallee's contention that C.T. initiated the sexual contact by offering to have sex with him and Sherry if they would steal her car, as she was unemployed and trying to sell the car.

**6.** We also note that the State has argued on appeal that Sallee's failure to comply with the procedural requirements of Rule 412 waived any claim of error. However, the requirement that the proponent of the evidence file a written motion ten days prior to trial applies only if the evidence sought to be introduced fits within one of the exceptions to the general rule. *See* Ind.Code § 35–37–4–4(c) ("If the defendant or the state proposes to offer evidence described in subsection (b) of this section [listing three exceptions to the general rule], the following procedure must be followed. . . .").

relevant the jury instructions, argument of counsel, and other factors that may have guided the jury's determination. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind.2002). Under the actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Id.* at 833.

In *Guyton v. State*, 771 N.E.2d 1141 (Ind.2002), our supreme court noted that the following five situations, first enumerated by Justice Sullivan in his concurrence in *Richardson*, violate Indiana's double jeopardy clause: 1) "conviction and punishment for a crime which is a lesser-included offense of another crime for which the defendant has been convicted and punished"; 2) "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished"; 3) "conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished"; 4) "conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished"; and 5) "conviction and punishment for the crime of conspiracy where the overt act that constitutes an element of the conspiracy charge is the very same act as another crime for which the defendant has been convicted and punished." *Guyton*, 771 N.E.2d at 1143 (quoting *Richardson*, 717 N.E.2d at 55–57 (Sullivan, J., concurring)).

B. Rape and Criminal Deviate Conduct

■ Sallee contends that his rape and criminal deviate conduct convictions, charged as Class A felonies for the threat of use of deadly force, cannot both stand because the same evidence was used to support the threat of deadly force component of each. Thus, he essentially challenges his convictions on the basis of the fourth of Justice Sullivan's double jeopardy formulations: conviction and punishment for an enhancement of a crime where the enhancement is imposed for the very same behavior or harm as another crime for which the defendant has been convicted and punished. In this case, the behavior which enhances both the rape and criminal deviate conduct convictions is the threat of use of deadly force to accomplish both crimes.

The information charging Sallee with rape as a Class A felony pursuant to Indiana Code section 35–42–4–1(b)(1) states as follows:

[O]n or about April 9, 2001 in Morgan County, State of Indiana, Edward G. Sallee did knowingly have sexual intercourse with a person of the opposite sex, to-wit: [C.T.]; when such person was compelled to do so by force and threatening the use of deadly force.

Appellant's Appendix at 96. The statute defining rape provides:

(a) Except as provided in subsection (b), a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) the other person is compelled by force or imminent threat of force;

* * *

commits rape, a Class B felony.

(b) An offense described in subsection (a) is a Class A felony if:

(1) it is committed by using or threatening the use of deadly force . . . .

Ind.Code § 35–42–4–1(a), (b)(1).

Additionally, the information charging Sallee with criminal deviate conduct as a

Class A felony pursuant to Indiana Code section 35–42–4–2(b)(1) provides:

> [O]n or about April 9, 2001 in Morgan County, State of Indiana, Edward G. Sallee did knowingly cause [C.T.], another person, to submit to deviate sexual conduct when [C.T.] was compelled to do so by force and threatening the use of deadly force.

Appellant's Appendix at 96. The statute defining criminal deviate conduct states as follows:

> (a) A person who knowingly or intentionally causes another person to perform or submit to deviate sexual conduct when:
>
> (1) the other person is compelled by force or imminent threat of force;
>
> * * *
>
> commits criminal deviate conduct, a Class B felony.
>
> (b) An offense described in subsection (a) is a Class A felony if:
>
> (1) it is committed by using or threatening the use of deadly force. . . .

Ind.Code § 35–42–4–2(a), (b)(1).

C.T. testified that after Sallee and Sherry led her into the house, Sherry left briefly. Sallee undressed her and had started to perform oral sex on her when Sherry returned. At that point, "[t]hey said they were going to take the tee shirt off of my head and that I couldn't open my eyes and see anything. And if I saw anything they would kill me." Tr. at 589. When asked how many times Sallee and Sherry threatened her, C.T. responded, "It was numerous times. They just told me. It was different times. If I saw anything they would have to kill me. If I told anybody

they would have to kill me and anything that I did wrong, I was afraid that ... I didn't know if they had any weapons because I couldn't see." Tr. at 601. Finally, as they were driving her away from the house, they said "they knew everything about me and that if I told that they would kill me." Tr. at 602.

Justice Sullivan noted in his concurrence in *Richardson* that to the extent a defendant's conviction for one crime is enhanced for engaging in particular additional behavior (here, the threat of deadly force), that behavior cannot also be used as an enhancement of a separate crime. 717 N.E.2d at 56 (citing *Campbell v. State*, 622 N.E.2d 495, 500 (Ind.1993)). However, he also noted that where the behavior that is the basis of the enhancement is distinct and separate, no double jeopardy relief is provided. *Id.* (citing *Woods v. State*, 677 N.E.2d 499, 501–02 (Ind.1997); *Jackson v. State*, 625 N.E.2d 1219, 1222 (Ind.1993); *Hansford v. State*, 490 N.E.2d 1083, 1089 (Ind.1986)). In this case, there is sufficient evidence of separate and distinct threats to support the enhancement of each crime.[7] Sallee has failed to demonstrate a reasonable possibility that the evidentiary facts used by the jury to establish the element enhancing rape to a Class A felony were also used to establish the element enhancing criminal deviate conduct to a Class A felony. Accordingly, there is no double jeopardy violation in the conviction and sentence for both rape and criminal deviate conduct as Class A felonies.

### C. Rape/Criminal Deviate Conduct and Criminal Confinement

 Sallee also contends that his convictions of rape/criminal deviate conduct

---

7. We note that the trial court specifically referenced the double jeopardy issue during sentencing: "The issue of *State versus Richardson* rears its head in this matter since both Counts One and Two have the component of by threatening the use of deadly force. I specifically find that the threats were numerous and continuous and were directed at each individual crime separately." Tr. at 1203.

1214

and criminal confinement violate the prohibition on double jeopardy. He asserts that there is a reasonable possibility that the evidentiary facts used by the jury to find him guilty of rape and criminal deviate conduct were also used to find him guilty of criminal confinement because there was no confinement beyond that necessary to effect the rape and criminal deviate conduct. In essence, Sallee argues that the criminal confinement conviction cannot stand under the third of Justice Sullivan's *Richardson* formulations: conviction and punishment for a crime which consists of the very same act as an element of another crime for which the defendant has been convicted and punished. We disagree.

The information charging Sallee with criminal confinement states as follows:

[O]n or about April 9, 2001 in Morgan County, State of Indiana, Edward G. Sallee did knowingly confine [C.T.] without the consent of [C.T.]

Appellant's Appendix at 96. Criminal confinement is defined by statute as:

(a) A person who knowingly or intentionally:

(1) confines another person without the other person's consent;

* * *

commits criminal confinement.... [T]he offense of criminal confinement is a Class D felony.

Ind.Code § 35–42–3–3(a)(1).[8]

C.T. testified that as she drove Sallee and Sherry to their house, they asked her to pull over. When she did, Sallee pulled her into the back seat of the car and Sherry drove her car. They would not let her into the front seat, from which she planned to jump out the window, and they

would not let her out of the car despite her pleas that they do so. The State noted this evidence in its closing argument when describing how the evidence supports each of the charged crimes. *See* Tr. at 1093. Thus, without reference to the subsequent events, the essential elements of criminal confinement can be established. Sallee has failed to demonstrate a reasonable probability that the jury used the same facts to establish the elements of rape and criminal deviate conduct as it did to establish the elements of criminal confinement. There is no double jeopardy violation.

IV. Sentence

Finally, Sallee contends that the trial court erred in sentencing him. First, he contends that the trial court failed to adequately identify and balance the aggravating and mitigating circumstances. Second, he contends that his 103–year sentence is manifestly unreasonable.

A. Standard of Review

In general, sentencing determinations are within the trial court's discretion and are governed by Indiana Code section 35–38–1–7.1. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind.2002). We review a trial court's sentencing decisions only for abuse of discretion, including the court's decisions to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances and to run the sentences concurrently or consecutively. *Id.* If a trial court relies upon aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the

8. Both Sallee and the State refer to the "threat of force" element of confinement in their discussions. *See* Appellant's Brief at 16–17; Brief of Appellee at 22. We note that there is no threat of force element in confinement as it was charged against Sallee.

court's evaluation and balancing of the circumstances. *Id.*

## B. Aggravating and Mitigating Circumstances

██ The trial court identified several aggravating circumstances in its sentencing statement. The aggravators included: Sallee's criminal record; that he had violated the conditions of his probation from an earlier criminal matter; and that he was in need of correctional rehabilitative treatment best provided by commitment to a penal facility. Tr. at 1201–02. The trial court also cited the following as aggravating circumstances: the length of time over which the offenses occurred; the continuing violation of the victim; that the offenses were planned; and that Sallee took advantage of a "Good Samaritan."

The trial court also noted the mitigating circumstances Sallee had offered: that his mother was killed by his father when he was a young boy and that he then went to foster homes. However, the trial court found that these circumstances did not mitigate the crimes of which Sallee was convicted. Thus, the trial court essentially found no mitigating circumstances.

Sallee essentially argues that of the seven aggravating circumstances he has extracted from the trial court's sentencing statement, only two are correct. He further contends that the trial court found two mitigating circumstances: that his mother was killed when he was young and that he thereafter resided in foster homes. He then asserts that "[b]y adding up the aggravators and the mitigators, they balance out." Appellant's Brief at 20. We note first that the balancing of the aggravating and mitigating circumstances is not to be conducted by a mathematical calculation. "Two for two" does not mean that the nature of one set of circumstances cannot outweigh the other. Moreover, we note that the trial court considered Sallee's proffered mitigators, but specifically rejected them. Thus, there were no mitigating circumstances to balance against the aggravating circumstances.

Finally, we note that the objections Sallee makes to several of the aggravators cited by the trial court are without merit. For instance, he contends that the length of time over which the offenses occurred and the continuing violation of the victim are but one aggravating circumstance. We agree that these two statements can be summarized as describing the "nature and circumstances of the crime." However, the nature and circumstances of the crime is an appropriate aggravating circumstance. Sallee also contends that the trial court found the threat of force to be a separate aggravating circumstance, and contends this is error because threat of force is an element of the crimes. Although the trial court did mention the use of threat of force in its sentencing statement, we do not believe the trial court considered the threat of force to be an aggravating circumstance; rather, the trial court merely noted that there was sufficient evidence of multiple threats to support the Class A convictions for both rape and criminal deviate conduct. Sallee also contends that the trial court erred in failing to articulate why he was in need of correctional treatment best provided by commitment to a penal facility. Even if we were to agree that the bare statement alone without explanation is insufficient to support this aggravator, there remain multiple valid aggravators which support both the enhanced and consecutive sentences the trial court imposed. We hold that the trial court properly articulated and balanced the aggravating and mitigating circumstances in sentencing Sallee.

## C. Manifestly Unreasonable Sentence

██ If a sentence is authorized by statute, it will not be revised or set aside

unless it is manifestly unreasonable in light of the nature of the offense and the character of the offender. *Bocko v. State,* 769 N.E.2d 658, 669 (Ind.Ct.App.2002); Ind. Appellate Rule 7(B). We must refrain from merely substituting our opinions for those of the trial court. *Bocko,* 769 N.E.2d at 669.

Sallee briefly argues that his 103–year sentence is manifestly unreasonable. We note first that Indiana Code section 35–50–1–2 authorizes the consecutive sentences imposed in this case. Because rape and criminal deviate conduct are "crimes of violence" as defined by that section, the year limitation on consecutive sentences for crimes committed as part of an episode of criminal conduct is not applicable. *See* Ind.Code § 35–50–1–2(a), (c). In light of the evidence before the trial court regarding these crimes, we cannot say the imposition of consecutive maximum sentences was manifestly unreasonable.

## Conclusion

The State presented sufficient evidence to support Sallee's convictions. The trial court properly excluded Sallee's proferred evidence regarding the victim's prior sexual conduct. On the facts of this case, Sallee's convictions and sentences for rape, criminal deviate conduct, and criminal confinement do not constitute double jeopardy under our state constitution. Sallee's enhanced and consecutive sentences are properly supported by aggravating circumstances and the aggregate 103 year sentence is not manifestly unreasonable. Accordingly, Sallee's convictions and sentence are affirmed.

Affirmed.

RILEY, J., and MATTINGLY–MAY, J., concur.