Danny Ray BENNETT, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A01–0206–CR–203.

Court of Appeals of Indiana.

May 7, 2003.

⌐30

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Danny Bennett was convicted following a jury trial of robbery and four counts of criminal confinement, all Class B felonies, resisting law enforcement and receiving stolen property, both Class D felonies, and carrying a handgun without a license, a Class A misdemeanor. Bennett then pled guilty to the enhancement of carrying a handgun without a license to a Class C felony. The trial court sentenced Bennett to an aggregate forty-four year sentence. Bennett appeals the convictions and his sentence. We affirm Bennett's convictions, but revise his sentence and remand to the trial court for a determination of the total credit time to which Bennett is entitled for time served.

### Issues

Bennett raises five issues for our review, which we restate as:

1. Whether the trial court properly admitted photographs of Bennett's property into evidence during his trial;
2. Whether the State presented sufficient evidence for his receiving stolen property conviction;
3. Whether the trial court considered proper aggravating and mitigating circumstances in sentencing Bennett;
4. Whether Bennett's forty-four year sentence is inappropriate; and
5. Whether the trial court incorrectly calculated his credit for time served.

### Facts and Procedural History

On June 25, 2001, Bennett, wearing a ski mask and carrying a small chrome pistol, entered the backdoor of the Eagles Lodge in Ellettsville. Under the ski mask was netting that covered Bennett's eyes and the mouth of the ski mask was sewn shut. As it was almost closing time for the lodge, there were only four people present at the time. Bennett approached the bar and told Terri Gast, the bartender, to give him the money. Bennett threatened to kill her and the others present, so Gast put the money from the register into a bag and gave it to him. Bennett then ordered Gast to retrieve the money from the safe. When she said that she could not get into the safe, Bennett said that he knew that she could open the safe and to give him the money. Gast opened the safe and gave him one of the two bags of money inside.

Bennett then ordered the four people into the men's restroom and barricaded the door with chairs. As the four waited in the restroom, they heard Bennett remove the second bag of money from the safe and then exit the lodge. They then pushed open the restroom door. While one man called the police, another ran out the front door and saw a white vehicle with a black vinyl top leaving the lodge's parking lot. The men gave a description of the vehicle to the police.

Ellettsville Police Officer Brian Mobley received the call and, as he was getting into his police car, saw a white vehicle with a black vinyl top drive by. He observed Bennett's face through the partially open driver's side window. Officer Mobley gave chase. During the chase, Bennett's speed reached 100 miles per hour. Officer Mobley radioed the license plate number on the white vehicle to dispatch and learned

that the license plate was registered to Mark Moody.

Officer Mobley lost Bennett in a cloud of smoke on a gravel road. When Officer Mobley went to the lodge to talk to the witnesses, one witness, Mike Schmaltz, a part-time bartender at the lodge, stated that he believed Bennett was the robber. Schmaltz and Bennett had been friends for years and Schmaltz informed Officer Mobley that Bennett had lived on Moody's property until recently moving to a trailer near the point where Officer Mobley lost Bennett.

Schmaltz accompanied Officers Mobley and Alvy Bohall to Bennett's trailer. As they approached, Bennett exited his trailer. Schmaltz identified Bennett and Officer Mobley asked Bennett if he owned a white vehicle. Bennett said that he did and that it was parked behind the trailer. Bennett gave Officer Mobley permission to look at the vehicle. Officer Mobley recognized the vehicle as the one he had chased even though there was no longer a rear bumper or a license plate on the car. Officer Mobley touched the hood and ascertained that the car was warm. Additionally, Officer Mobley saw a ski mask, gloves, and a chrome handgun sitting on the driver's seat. The handgun was loaded with bullets. Officer Mobley arrested Bennett and impounded the white vehicle. White netting was found under the seat and four one-dollar bills were found on the floorboard. Officers returned the following day without a search warrant and collected evidence and took photographs of Bennett's property.

Bennett was charged with robbery, four counts of criminal confinement, carrying a handgun without a license, resisting law enforcement, and receiving stolen property. At trial, the photographs of Bennett's property were admitted over his objection. Bennett was convicted as charged and the trial court sentenced him to an aggregate forty-four year sentence.

*Discussion and Decision*

I. Admission of Evidence

A. Standard of Review

The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Wilson v. State*, 754 N.E.2d 950, 954 (Ind.Ct.App. 2001). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Id.*

B. Admission of Photographs Taken the Day After Bennett's Arrest

Upon arrest, Bennett consented to a search of his property. Following the search, the police left the property, transported Bennett to jail, and impounded the white vehicle. The following day, without a search warrant, the police returned to Bennett's property and conducted a further search of Bennett's property and trailer. Additionally, the police took photographs of Bennett's trailer and property.

Prior to trial, Bennett filed a Motion to Suppress seeking to have the items the police found and seized from his property during a series of searches excluded from evidence at trial. Following a two-day evidentiary hearing, the trial court granted Bennett's motion in part and denied it in part. Specifically, the trial court stated:

The Court having reviewed the evidence and arguments of counsel regarding [Bennett]'s Motion to Suppress All Evidence, and being duly advised, now FINDS:

1. [Bennett]'s arrest was legal and appropriate;

2. The "sweep" of [Bennett]'s trailer and vehicle were lawful;

3. [Bennett] consented to the search of his trailer and car;

4. The items of evidence seized by the police during this search are admissible;

5. [Bennett]'s consent to the search was limited to the search conducted in his presence;

6. The police should have obtained a search warrant to conduct the "second search";

7. The items of evidence seized during the "second search" are suppressed....

Appellant's Appendix at 51.

■ Immediately preceding the trial, Bennett moved to suppress any photographs taken by the police during their second search except for any photographs taken from the vantage point of the public road. Bennett argued that he had posted a "No Trespassing" sign on his property and therefore, he had a reasonable expectation of privacy. The trial court denied Bennett's motion. The State then offered four photographs of Bennett's trailer and property (labeled as State's Exhibits 12, 13, 14, and 17) and the court admitted them into evidence over Bennett's objection. Bennett does not appeal the admission of State's Exhibit 12 because it appears to have been taken from the vantage point of the public road, but Bennett argues that the trial court erred in refusing to suppress and exclude the other three photographs.

■ The State argues that the photographs were admitted as demonstrative evidence. Demonstrative evidence is evidence offered for purposes of illumination and clarification. *Wise v. State,* 719 N.E.2d 1192, 1196 (Ind.1999). To be admissible, the evidence need only be sufficiently explanatory or illustrative of relevant testimony to be of potential help to the trier of fact. *Id.*

■ The State argues that the officers did not violate the Fourth Amendment by entering Bennett's property and taking the photographs. The touchstone of Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." *Shultz v. State,* 742 N.E.2d 961, 964 (Ind.Ct.App. 2001), *trans. denied* (quoting *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984)). Thus, when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places visitors could be expected to go (e.g., walkways, driveways, porches), observations made from such vantage points are not covered by the Fourth Amendment. *Id.* The State argues that the officers took photographs of those areas of Bennett's property that were open to the public. We cannot agree. Exhibit 17, for example, is a photograph taken of the area behind Bennett's trailer. This cannot be considered an area open to the public such as a driveway or walkway. Therefore, the trial court erred in admitting Exhibits 13, 14, and 17.

■ However, the admission of the photographs was harmless error. Admission of evidence in violation of the Fourth Amendment is subject to harmless error analysis. *Smock v. State,* 766 N.E.2d 401, 407 (Ind.Ct.App.2002). Harmless error occurs when the conviction is supported by substantial independent evidence of guilt which satisfies the reviewing court that there is no likelihood that the erroneously admitted evidence contributed to the conviction. *Id.* The reviewing court must find that there is no substantial likelihood the error contributed to the verdict, or, in other words, that the error was unimpor-

tant in relation to everything else before the jury on the issue in question. *Id.*

We note first that Bennett has not articulated any prejudice from the admission of the photographs. Rather, he has merely stated that the trial court erred in their admission. Additionally, we note that admission of the photographs did not contribute to any of the verdicts. Therefore, because Bennett does not articulate any prejudice and because the photographs did not contribute to the guilty verdicts, we hold that it was harmless error to admit them.

## II. Sufficiency of the Evidence

### A. Standard of Review

Our standard of review for sufficiency claims is well settled. We will not reweigh the evidence or assess the credibility of the witnesses. *Sallee v. State,* 777 N.E.2d 1204, 1208 (Ind.Ct.App.2002), *trans. denied.* Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

### B. Sufficiency of the Evidence to Prove Receiving Stolen Property Conviction

Bennett contends that the State failed to present sufficient evidence that he received or retained stolen property, namely a license plate previously attached to a vehicle owned by Moody and his daughter, Mandalyn. The offense of receiving stolen property is defined as:

A person who knowingly or intentionally receives, retains, or disposes of the property of another person that has been the subject of theft commits receiv-

ing stolen property, a Class D felony. . . .

Ind.Code § 35–43–4–2(b).

Bennett presents two arguments regarding the sufficiency of the evidence to prove the receiving stolen property conviction: first, he argues that Moody did not own the license plate; second, he argues that he had no knowledge that the license plate had been stolen and that merely possessing stolen property is not enough to support a conviction of receiving stolen property.

During the chase following the robbery, Officer Mobley recorded the license plate of the white vehicle. Upon radioing dispatch with the license number, Officer Mobley learned that the license plate belonged to Moody. Moody testified at Bennett's trial that the license plate was on a junked 1992 Geo which had been parked on his property for about a year. Until he was informed by the police the morning after the robbery that the license plate had been on the white vehicle, Moody was unaware that the license plate was missing. He testified at Bennett's trial that he had not given anyone permission to remove the license plate from the Geo.

Following the chase, Officer Mobley went to Bennett's trailer. He asked Bennett if Bennett owned a white vehicle with a black top and Bennett replied that he did. Officer Mobley recognized the vehicle as the one he had chased. At the time of the chase, the white vehicle had the license plate attached to it.

Bennett argues first that Moody did not own the license plate. The name of the owner of the property alleged to have been stolen is a material allegation that must be proved beyond a reasonable doubt. *Thomas v. State,* 423 N.E.2d 682, 685 (Ind.Ct.App.1981). However, as Bennett concedes, absolute ownership of the

property need not be in the person alleged to be the owner as long as the evidence establishes that the person alleged had lawful possession of the property. *Bryant v. State*, 252 Ind. 17, 245 N.E.2d 156, 158 (1969).

The State argues that, although Indiana Code section 9–18–2–31 establishes that a license plate issued by the Bureau of Motor Vehicles remains the property of the bureau, the evidence was sufficient at trial to show that Moody had a possessory interest sufficient to support Bennett's conviction for receiving stolen property. *See Driver v. State*, 725 N.E.2d 465, 471 (Ind. Ct.App.2000) (evidence sufficient for receiving stolen property where the owner of the vehicle from which the license plate was stolen testified that the plate had been on his vehicle and he did not give anyone permission to take the plate). We agree. Moody held a possessory interest in the license plate sufficient to sustain Bennett's receiving stolen property conviction.

■ Bennett also argues that Moody's possessory interest expired upon the expiration of the license plate. However, a license plate owner's possessory interest does not expire upon the expiration of the plate. Therefore, even though the plate in question had expired, Moody retained sufficient possessory interest to sustain Bennett's receiving stolen property conviction.

■ Second, Bennett argues that the evidence was insufficient to prove that he "knowingly or intentionally" received stolen property. Bennett contends that he was unaware the license plate was stolen. To sustain a conviction for receiving stolen property, the State must show that the defendant had knowledge of the stolen character of the property. *J.B. v. State*, 748 N.E.2d 914, 918 (Ind.Ct.App.2001). Knowledge that property is stolen may be inferred from the circumstances surrounding the possession. *Stone v. State*, 555 N.E.2d 475, 477 (Ind.1990). Attempts to conceal evidence may be considered by the jury as revealing consciousness of guilt. *Id.*

We note that Bennett had full access to Moody's property. The license plate had been attached to a vehicle registered to Moody and sitting on Moody's property. The evidence at trial showed that the same license plate was attached to Bennett's car during the time of the robbery. Moody did not give Bennett permission to remove the plate from the Geo and place it on his own white vehicle. Within a short time after the robbery, the license plate—and the entire rear bumper—were removed from Bennett's vehicle. Considering the attachment of the license plate to Bennett's white vehicle during the robbery and the removal of the license plate within a short period of time afterward, the jury reasonably inferred that Bennett was aware the license plate was stolen.

Additionally, we note that the jury heard the evidence and determined that Bennett knew the license plate was stolen. We will not reweigh the credibility of the witnesses. Therefore, we hold that the State presented sufficient evidence for Bennett's receiving stolen property conviction.

### III. Sentencing

#### A. Improper Aggravating Factors

##### 1. Standard of Review

■ In general, sentencing decisions are within the trial court's discretion and are governed by Indiana Code section 35–38–1–7.1. *Sallee*, 777 N.E.2d at 1214. We review a trial court's sentencing decisions only for abuse of discretion, including the court's decisions to increase or decrease the presumptive sentence because of aggravating or mitigating circumstances and to run the sentences concurrently or consecutively. *Id.* If a trial court relies upon aggravating or mitigating circumstances to enhance or reduce the pre-

sumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.* at 1214–15.

### 2. Bennett's Aggravating Factors

The trial court announced the aggravating factors at the sentencing hearing on April 11, 2002:

> The Court finds that aggravating circumstances include, uh, [Bennett]'s criminal history. They include that fact that this crime was committed against people who considered [Bennett] to be their friend prior to the commission of the act. Uh, the Court considers it an aggravating circumstance that obviously this was well-planned in advance.... I find no mitigating circumstances....

Transcript at 380. Bennett argues that the trial court erred in considering the fact that the robbery had been planned in advance and that the victims considered themselves to be Bennett's friends prior to the crime as aggravating factors. He cites *Wethington v. State,* 560 N.E.2d 496 (Ind. 1990), for this proposition. In *Wethington,* our supreme court stated:

> Further, a court may find that the factual details of the manner in which the crimes were committed constitute an aggravating circumstance as long as its finding is a particularized account of the aspects of the crime which illustrated to the court the defendant's deservedness of an enhanced sentence rather than a bare recitation of the elements of the charges.

*Id.* at 509–10. Additionally, Bennett argues that, in order to constitute a proper aggravating circumstance, the court's account must demonstrate that the behavior was more callous and reprehensible than the minimum conduct necessary to estab-lish the commission of any similar offenses. *See Allen v. State,* 719 N.E.2d 815, 819 (Ind.Ct.App.1999), *trans. denied.*

We note first that Bennett does not contend that the trial court improperly considered his criminal history as an aggravating circumstance. One aggravating circumstance is sufficient to warrant an enhanced sentence. *Bonds v. State,* 729 N.E.2d 1002, 1005 (Ind.2000). Even if we find that the trial court erred in considering either of the two challenged aggravating circumstances, the trial court could still enhance Bennett's sentence through the single aggravating circumstance of his criminal history.

The State asserts that the circumstances here are more egregious than a typical robbery. We agree. Bennett was a treasurer for the lodge prior to the robbery, thereby placing him in a position of trust with the members of the lodge. Additionally, through his position as treasurer, he knew which night the lodge would have the most money. Also, Bennett pointed a gun at people who considered him a friend and threatened to kill them if they did not cooperate and give him the money from the safe. We hold that it was reasonable for the trial court to consider it more egregious for Bennett to rob his friends by using information he received while in a position of trust with those friends and with other members of his lodge. Therefore, the trial court did not err in considering this an aggravating circumstance.

### B. Mitigating Factors

### 1. Standard of Review

The trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Rodriguez v. State,* 785 N.E.2d 1169, 1178 (Ind.Ct.App.2003).

Also, the trial court is not required to give the same weight to proffered mitigating circumstances as the defendant does. *Thacker v. State*, 709 N.E.2d 3, 10 (Ind. 1999). Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked. *Rodriguez*, 785 N.E.2d at 1178–79.

### 2. Bennett's Proffered Mitigating Factors

Bennett argues that the trial court erred in rejecting four mitigating factors: (1) Bennett was employed; (2) Bennett was a law-abiding citizen for most of his life; (3) Bennett was subjected to abuse as a child and is an alcoholic; and (4) Bennett's incarceration is an undue hardship on his children.

#### a. Bennett's Employment

■ Bennett contends that the trial court overlooked the fact that he was employed at the time of the commission of these offenses and has been steadily employed for most of his adult life. Bennett relies on *Scheckel v. State*, 620 N.E.2d 681 (Ind.1993), arguing that his consistent employment reflects positively on his character and should not have been overlooked by the trial court. However, in *Scheckel*, our supreme court noted that testimony was offered at Scheckel's sentencing hearing that he was a good worker with much promise. Additionally, testimony was offered that he had been a volunteer teacher in a community children's tumbling program as well as assisting with a church activity in addition to his regular employment. Therefore, the court held that it was erroneous for the trial court to overlook the proffered mitigating circumstances. *Id.* at 686. Here, Bennett did not present a specific work history, performance reviews, or attendance records. Additionally, he did not argue to the trial court that his employment was a significant mitigating circumstances or present any evidence to support such a claim. Therefore, the trial court properly did not find that Bennett's employment was a significant mitigating circumstance.

#### 2. Bennett's Law–Abiding Life

■ Bennett pleaded nolo contendere to battery in Florida in 1994 and committed non-support of a dependent in 1997, violating his probation in the battery case. Although Bennett argues that the trial court should have considered the fact that he was law-abiding for most of his life, it was not unreasonable for the trial court to find that Bennett's prior felony conviction made this an inappropriate mitigating factor.

#### 3. Bennett's Abusive Background and Substance Abuse

■ Bennett was subjected to physical abuse and neglect as a child that resulted in his being removed from his mother's home by the welfare department and being placed in foster care. However, Bennett has failed to establish why this warrants mitigation in his sentencing. *See Blanche v. State*, 690 N.E.2d 709, 715 (Ind.1998) (evidence of a troubled childhood does not require a trial court to find it a mitigating circumstance).

■ Additionally, Bennett argues that he is an alcoholic who requires substance abuse treatment which he has never received. We are not persuaded by this argument. First, Bennett does not argue why this factor warrants mitigation in his sentencing. Second, this factor could also be considered an aggravating circumstance in that Bennett was aware that he had an alcohol problem and never sought help for it. Therefore, it was not erroneous for the trial court to fail to consider his childhood and his alcoholism as mitigating circumstances.

#### 4. Undue Hardship on Bennett's Family

██ Finally, Bennett notes that testimony was presented at the sentencing hearing from his mother, one of his daughters and his fiancée that a term of imprisonment in excess of the standard punishment would result in undue hardship to them. However, Bennett and his witnesses failed to establish that Bennett provided any financial support for his family which would be diminished by his imprisonment. In fact, Bennett had been convicted of non-support of a dependent for his failure to provide financial support for his daughters. Additionally, Bennett failed to present any evidence that he intended to comply with the child support order upon his release from incarceration. Therefore, the trial court properly rejected this proffered mitigating factor.

### C. Appropriateness of Sentence

#### 1. Standard of Review

██ Under Article VII, Section 6 of the Indiana Constitution, we have the constitutional authority to review and revise sentences. Additionally, it is clear that our supreme court has encouraged us to critically investigate sentencing decisions. *See, e.g., Walker v. State,* 747 N.E.2d 536, 538 (Ind.2001). However, we exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. A sentence, which is authorized by statute, will not be revised unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *Watson v. State,* 784 N.E.2d 515, 521 (Ind. Ct.App.2003). When considering the appropriateness of the sentence for the crime committed, courts should initially focus upon the presumptive sentence. *Watson,* 784 N.E.2d at 521. Trial courts may then consider deviation from the presumptive sentence based upon a balancing of the factors, which must be considered pursuant to Indiana Code section 35–38–1–7.1(a) together with any discretionary aggravating and mitigating factors found to exist. *Id.* We must refrain from merely substituting our opinions for those of the trial court. *Catt v. State,* 749 N.E.2d 633, 641 (Ind.Ct.App.2001), *trans. denied.*

#### 2. Appropriateness of Bennett's Sentence

██ The presumptive sentence is meant to be the starting point for the trial court's consideration of the sentence that is appropriate for the crime committed. *Watson,* 784 N.E.2d at 521. In the present case, Bennett was convicted of robbery and four counts of criminal confinement, all Class B felonies. Each Class B felony carries a presumptive sentence of ten years, to which up to four years may be subtracted for mitigating circumstances or up to ten years may be added for aggravating circumstances. Ind.Code § 35–50–2–5. Additionally, Bennett was convicted of carrying a handgun without a license, a Class C felony. A Class C felony carries a presumptive sentence of four years, to which up to two years may be subtracted for mitigating circumstances or up to four years may be added for aggravating circumstances. Ind.Code § 35–50–2–6. Finally, Bennett was convicted of resisting law enforcement and receiving stolen property, each of which is a Class D felony. A Class D felony carries a presumptive sentence of one and one-half years, to which up to one year may be subtracted for mitigating circumstances or up to one and one-half years may be added for aggravating circumstances. Ind.Code § 35–50–2–7.

The trial court sentenced Bennett to an aggregate sentence of forty-four years:

I find no mitigating circumstances, so the Court will sentence [Bennett] on the

crime of armed robbery to the maximum sentence of 20 years. [The] Court will sentence [Bennett] on each count of criminal confinement to 15 years imprisonment, those will be served concurrently, and consecutive to the first sentence. With respect to [Bennett] having been found guilty of possessing a handgun by a felon, the Court will sentence [Bennett] to six years imprisonment to be served consecutive to the other sentences. And with respect to the crime of resisting law enforcement and possession of stolen property as class D Felonies, the Court will sentence [Bennett] to periods of three years of imprisonment each and will order those served concurrently and consecutive to the previous sentence, sentences [sic].

Transcript at 380–81.

 We note first that the trial court sentenced Bennett to the maximum for his robbery conviction. We believe this to be excessive. Although the trial court properly analyzed the aggravating circumstances and properly denied Bennett's proffered mitigating factors, we do not believe that Bennett should be given the maximum sentence for the robbery.

However, it is apparent in light of the aggravating circumstances that his sentence should be greater than the ten-year presumptive sentence for robbery as a Class B felony. We find particularly compelling the position of trust Bennett held with respect to the lodge and its members. Accordingly, we revise Bennett's sentence for robbery to twelve years.

 The trial court sentenced Bennett to fifteen years for each of the criminal confinement convictions. We hold that the aggravating circumstances, although properly analyzed by the trial court, do not justify elevating Bennett's sentence from the ten-year presumptive sentence for criminal confinement as a Class B felony. Therefore, we reduce Bennett's sentence

to the presumptive ten years for each of the four criminal confinement convictions. Additionally, we hold that the trial court properly determined that the criminal confinement sentences should be served concurrently, but served consecutively to the robbery sentence.

 The trial court sentenced Bennett to six years for carrying a handgun without a license. The aggravating circumstances properly elevated the sentence for robbery. However, the aggravating circumstances do not properly apply to whether Bennett had a license for the handgun he carried. Bennett's prior convictions were not accompanied by a handgun and his position of trust more accurately applies to the robbery conviction. Therefore, we revise Bennett's sentence for carrying a handgun without a license to the presumptive sentence of four years to be served consecutively to Bennett's robbery and criminal confinement sentences.

 Finally, the trial court sentenced Bennett to the maximum three years for each of his Class D felony convictions, resisting law enforcement and receiving stolen property. The trial court found that these sentences were to be served concurrently, but consecutive to Bennett's other sentences. Bennett argues that we should reduce each of these sentences to the presumptive one and one-half years and hold that they should be served concurrently to each other and to his carrying a handgun without a license sentence, but consecutively to Bennett's other sentences. We agree with Bennett's argument regarding his receiving stolen property sentence. Having knowingly retained a license plate from an abandoned car, Bennett can hardly be considered to be in the class of worst offenders the maximum sentence was meant to encompass. Therefore, we reduce Bennett's sentence for receiving

stolen property to the presumptive sentence of one and one-half years.

 However, Bennett's argument regarding his resisting law enforcement sentence is less convincing. Bennett was involved in a car chase with police that, at times, reached one hundred miles per hour. This kind of chase put in danger the lives of the police officers involved as well as the public at large. We refuse Bennett's request to reduce his sentence for resisting law enforcement. Bennett's sentence for resisting law enforcement remains as three years. However, we hold that Bennett will serve this sentence concurrently to his receiving stolen property and carrying a handgun without a license sentences, but consecutively to his other sentences.

Therefore, Bennett will serve twelve years for his robbery conviction, concurrent ten-year sentences for each of his four criminal confinement convictions to be served consecutively to the robbery sentence, a consecutive term of four years for his carrying a handgun without a license conviction, concurrent with sentences of one and one-half years for receiving stolen property, and three years for resisting law enforcement for an aggregate of twenty-six years.

### IV. Credit for Time Served

#### A. Standard of Review

 A person imprisoned for a crime or confined awaiting trial or sentencing earns one day of credit time for each day he is confined. Ind.Code § 35–50–6–3, –4. Determination of a defendant's pretrial credit is dependent upon (1) pretrial confinement, and (2) the pretrial confinement being a result of the criminal charge for which sentence is being imposed. Ind. Code § 35–50–6–3; *Bischoff v. State*, 704 N.E.2d 129, 130 (Ind.Ct.App.1998), *trans. denied.* Credit is to be applied for time spent in confinement that is the result of the charge for which the defendant is being sentenced. *Bischoff*, 704 N.E.2d at 130.

#### B. Bennett's Credit for Time Served

 The trial court awarded Bennett 198 days of credit for time served. Bennett claims he is entitled to 289 days of credit, from his arrest on June 26, 2001, to the date of his sentencing hearing on April 11, 2002. The record is unclear as to whether Bennett remained incarcerated in Monroe County during that entire period of time. Therefore, we remand to the trial court to determine the total credit time to which Bennett is entitled. *See Senn v. State,* 766 N.E.2d 1190, 1203 (Ind.Ct.App. 2002) (remand necessary where it is not clear in the record whether the trial court properly credited the defendant's sentence with credit time for time spent in jail).

### Conclusion

Although the trial court erred in admitting photographs of Bennett's property into evidence, the error was harmless. Additionally, we hold that the State presented sufficient evidence to sustain Bennett's receiving stolen property conviction. Although the trial court properly analyzed each of the aggravating circumstances and each of Bennett's proffered mitigating factors, we hold that Bennett's sentence was inappropriate and revise his sentence to a twenty-six year aggregate sentence. Finally, we remand to the trial court for a determination of the total credit time to which Bennett is entitled for time served.

Affirmed in part, revised in part, and remanded to the trial court for further proceedings consistent with this opinion.

FRIEDLANDER, J., concurs.

VAIDIK, J., concurs in part and dissent in part with opinion.

VAIDIK, Judge, concurring in part and dissenting in part.

While I concur as to all the other issues, I respectfully disagree with the majority's decision to revise Bennett's sentence. Admittedly, our supreme court has signified that it wants us to closely examine sentences. *Walker v. State*, 747 N.E.2d 536, 538 (Ind.2001). However, in doing so, we must refrain from merely substituting our opinions for those of the trial court. Slip op. at 17.

In light of the recent revision to Appellate Rule 7(B), which now requires that a sentence be shown to be "inappropriate" before it is revised, rather than the more arduous burden of showing the sentence to be "manifestly unreasonable," it is likely that as an appellate tribunal we will be called on more frequently to review sentences. However, we must exercise great restraint in answering this call because the trial court is in a far better position to assess the proper sentence to be imposed as it has heard all of the evidence first hand, thereby gaining valuable impressions from inferences that the trier of fact was privy to in hearing the entire testimony in a cause. *See, e.g., Caden v. Caden,* 152 Ind.App. 451, 454, 283 N.E.2d 804, 806 (1972) ("[T]he opportunities of the trial court are so vastly superior to those of the reviewing court in that they are able to see the witnesses face to face, to observe their conduct, appearance and demeanor on the witness stand and thus judging all their intelligence, fairness and candor and many other means of weighing evidence that the reviewing court cannot have."). We, however, are aided only by a sterile record, which does not permit us these same opportunities. Accordingly, we should only revise sentences when the trial court has imposed a sentence that is unmistakably inappropriate.

Inappropriateness defies definition but when present is obvious. When it is not obvious that a sentence is inappropriate, "due consideration" should be afforded to the trial court's sentence as mandated by Appellate Rule 7(B). This is not to say that we should never revise a sentence that is based on valid aggravators and mitigators and falls within the statutory parameters; rather, as an appellate court we should revise only those sentences which are so inconsistent with the vast majority of sentences that they are grossly unfair.

Commentators point to consistency as one of the reasons for appellate review of sentences. A system based on consistency makes it easier to identify sentences that are inappropriate:

> The requirement of consistency addresses the concept of proportionality by directing the court to consider sentences imposed upon different offenders in the same case or on offenders in similar cases. The consistency concept gives legal relevance to sentences of other judges. It adopts the premise that an overwhelming majority of judges sentence similarly, that a relatively small minority sentence outside of the mainstream, and that sentences outside of the mainstream of judicial practice are inappropriate.

Burt W. Griffin & Lewis R. Katz, *Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan,* CASE W. RES. L.REV. 1, 12–13 (2002). In addition to helping to identify inappropriate sentences, consistency also adds credibility to the judicial system.

While as an appellate tribunal we help to maintain consistency, the establishment of consistency is primarily a legislative function, not a judicial one. While other jurisdictions have established sentencing guidelines or sentencing review committees, our legislature has chosen to set forth mitigating and aggravating factors to be consid-

ered by the trial judge when imposing a sentence, as well as minimum and maximum sentences, thereby vesting greater discretion in our trial judges. Thus, our principal role in promoting consistency is to review sentences to ensure that they are based on appropriate aggravators and mitigators and are within the minimum and maximum sentences prescribed by our legislature. After all, it is by maintaining our focus on the statutory parameters of sentencing established by our legislature, rather than second-guessing the trial court, that Indiana will continue to advance in the direction of consistency in sentencing. *Rodriguez,* 785 N.E.2d at 1176–77.

The foregoing leads me to believe that we should hesitate to find a sentence inappropriate if it is based on valid aggravating and mitigating factors and falls within the parameters established by our legislature. To do otherwise is dangerous, as we begin to inject into the mix our own personal feelings as to what is appropriate. For the reasons stated, we are ill-equipped to make such determinations. Moreover, such subjective second-guessing of the trial court's sentence determination poses a serious disservice to trial courts, as they are given no guidance for the future. Rather, such usurpation of the trial courts' role breeds uncertainty and undermines the discretion with which our trial courts are ostensibly armed. This is not a desired result.

Here, the trial court based its sentence on statutorily prescribed aggravators and mitigators, none of which the majority finds to be erroneous. Moreover, the sentence imposed fell within the statutory parameters. Additionally, as pointed out by the majority, the instant circumstances are more egregious than a typical robbery. Bennett, as a treasurer for the Eagles Lodge prior to the robbery, held a position of trust with the Lodge and all its members. Nonetheless, Bennett used this position to maximize the damage to his victims by carefully planning to rob the Lodge on the night of the week that the Lodge would have the most cash on hand. Further, Bennett pointed a loaded handgun at and threatened to kill individuals that were his friends. Bennett also ordered his friends into the restroom, stripped them of any cellular phones, and barricaded them inside by piling chairs in front of the door. Moreover, Bennett engaged the police in a high-speed chase, thereby posing a danger to the public at large. Even on a cold record, Bennett's actions exude an air of callousness and utter disregard for the law. In light of these facts, I would not find this sentence inappropriate and respectfully dissent from the majority's decision to revise Bennett's sentence.