# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2019, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Chad K. Green, *Appellant-Defendant,* | December 30, 2019 |
| v. | Court of Appeals Case No. 19A-CR-892 |
| | Appeal from the Jefferson Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Jeffrey L. Sharp, Special Judge |
| | Trial Court Cause Nos. 39C01-1806-F6-649 39C01-1608-F5-754 |

**Darden, Senior Judge.**

# Statement of the Case

[1]     Appellant Chad Green appeals the sentence he received for his conviction of residential entry, a Level 6 felony,[1] and operating a vehicle while intoxicated, a Class A misdemeanor.[2]  In addition, Green appeals the trial court's imposition of his entire previously suspended sentence following his admission to violating the terms of his probation.  We affirm.

# Issues

[2]     Green presents two issues for our review, which we restate as:

>   I.  Whether Green's sentence for residential entry and operating a motor vehicle while intoxicated is inappropriate.
>
>   II. Whether the trial court abused its discretion by ordering him to serve his entire previously suspended sentence in Cause No. 39C01-1608-F5-754.

# Facts and Procedural History

[3]     On the night of August 19 and into the early morning hours of August 20, 2016, Green and his girlfriend, Kimberleigh Edwards, had been drinking at an establishment in Madison, Indiana.  Green became extremely intoxicated.  After Green and Edwards left the establishment and entered a vehicle, they

---

[1] Ind. Code § 35-43-2-1.5 (2014).

[2] Ind. Code § 9-30-5-2(b) (2001).

began arguing. At one point, a police officer pulled next to their car and asked if everything was alright. Edwards told the officer everything was okay because she feared Green would hurt her otherwise. Once the officer left, the pair drove on to a location where they both exited the vehicle. Edwards attempted to leave the area, but Green grabbed her by the back of her neck and squeezed, causing Edwards pain, discomfort, and soreness. While squeezing the back of Edwards' neck, Green directed her back toward their car. When they were near the car, Green placed one hand on Edwards' chest and one hand on her back and squeezed, causing abrasions to her chest and back. Edwards was able to pull away from Green and run down the street, where she was met by Officer Decker.

[4] Officer Decker observed Edwards bent over with her hands on her knees, and he could hear her screaming and crying. Officer Decker put Edwards in his patrol car for her safety, and they drove toward an alley where she indicated Green had gone. As they approached the alley, they saw Green walking, and Edwards told Officer Decker she wanted to press charges against Green for his assault upon her. Officer Decker called for additional officers for back-up purposes and activated his emergency lights to signal Green to stop, but Green continued walking. Officer Decker then exited his patrol car and verbally ordered Green to stop, but Green merely turned around and commenced walking backward. Green became agitated when Officer Decker informed him of the reason for the stop. Officer Decker then caught up to Green and ordered him to place his hands behind his back, but Green tensed his arms and refused

to follow the officer's orders. Officer Decker was eventually able to place Green in restraints. Once Green was secure, he was given his *Miranda* rights, and initially he agreed to speak with Officer Decker. However, Green became confrontational and verbally abusive and then refused to speak.

[5] Edwards was removed from the police car, and officers attempted to place Green in the car. Green refused several requests to get into the police vehicle, verbally assailing the officers and spitting on Officer Decker. Officers were able to get Green into the police vehicle, after which he kicked Officer Decker, striking the officer's hands, right wrist, and right forearm and causing pain, discomfort, and soreness. Green continued to verbally and physically assault Officer Decker as the officer fastened the seat belt around him.

[6] Green was transported to the jail and placed in a cell, where he began kicking the door. Due to this behavior, the jail staff requested Officer Decker's assistance with placing Green in a restraint chair. The officers told Green several times to stop resisting and to lie down, but Green refused and assumed a fighting stance with raised fists. After repeatedly refusing the officers' orders to lie down, Green was tased. The officers were then able to place Green in the restraint chair.

[7] Based upon this incident, the State charged Green on August 22, 2016 in cause number 39C01-1608-F5-754 ("F5-754") with criminal confinement, a Level 5

felony;[3] intimidation, a Level 6 felony;[4] battery resulting in moderate bodily injury, a Level 6 felony;[5] battery against a public safety official, a Level 6 felony;[6] resisting law enforcement, a Class A misdemeanor;[7] domestic battery, a Class A misdemeanor;[8] and public intoxication, a Class B misdemeanor.[9] At Green's initial hearing on the same day, the court set his bond at $10,000 cash only, and, as a condition of his bond, the court entered a no contact order against him on behalf of Edwards.

[8]     Shortly thereafter, on September 7, 2016, the State filed a petition for revocation of bond, revocation of inmate phone access, and revocation of inmate outgoing mail privilege. In its petition, the State alleged that Green had violated the no contact order, thereby violating the conditions of his bond, by calling Edwards from jail after the no contact order was entered. Specifically, the State asserted that just after the no contact order was entered at his initial hearing on August 22, Green returned to the jail and called Edwards. In that conversation, he discussed his case with her, acknowledged the existence of the no contact order, and instructed her to tell the prosecutor that she was not

---

[3] Ind. Code § 35-42-3-3 (2014).

[4] Ind. Code § 35-45-2-1 (2014).

[5] Ind. Code § 35-42-2-1 (2016).

[6] *Id.*

[7] Ind. Code § 35-44.1-3-1 (2016).

[8] Ind. Code § 35-42-2-1.3 (2016).

[9] Ind. Code § 7.1-5-1-3 (2012).

"trying to have [Green] prosecuted." Appellant's App. Vol. 2, p. 47. The State asserted that, as of September 6, Green had made twenty-four phone calls from the jail to Edwards and had spoken to Edwards during at least thirteen of those calls. Subsequently, Green filed an application for release on own recognizance or reduction of bail. In November 2016, following a hearing on both motions, the trial court released Green on his own recognizance on the condition that he be transported directly to the Salvation Army Adult Rehabilitation Center in Fort Wayne. The trial court ordered Green to immediately report back to the county jail upon discharge from the center, absconding from the center, or successful completion of the program in order for a hearing to be held as to whether he would remain free on his own recognizance.

[9] In April 2017, Green petitioned the trial court to modify his release conditions. He was scheduled to graduate from the Adult Rehabilitation Center program in May 2017 and had been accepted into the Jefferson House Transitional Housing for Men. In light of these circumstances, he requested to be released to the Jefferson House rather than returning to the county jail to await a hearing as the trial court had previously ordered. In granting Green's request to modify his release conditions, the trial court conditioned his release on his compliance with the rules and regulations of the Jefferson House. Following a pre-trial conference in July 2017, the trial court ordered that, because Green was no longer required to reside at the Jefferson House, he would be placed on electronic monitoring and supervised by community corrections as a condition of his pre-trial release.

[10] On August 3, 2017, the State filed a second petition for revocation of bond, alleging that Green had again violated the no contact order by marrying Edwards on July 7, 2017. Additionally, on August 10, 2017, the county pretrial services department filed a notice of violation of pretrial release conditions, asserting that Green had violated the conditions of his pretrial release by failing to refrain from illegal activity; Green had been charged with invasion of privacy on August 8.

[11] No hearing was held on these motions, however, because, on September 7, 2017, Green and the State entered into a plea agreement with regard to the charges in F5-754. Pursuant to the terms of the agreement, Green would plead guilty to Level 5 felony criminal confinement and Class A misdemeanor domestic battery. He was to be sentenced to 1,825 days with 1,742 days suspended to probation on the felony and to zero days in jail on the misdemeanor. The agreement provided that, as a condition of his probation, Green would serve the suspended portion of his sentence under the supervision of community corrections. Further conditions included Green participating in a batterer's intervention program and being evaluated for alcohol and substance abuse and complying with any treatment recommendations. The court also vacated the no contact order. For its part, the State agreed to dismiss all remaining counts in F5-754 and all counts in another case. On November 17, 2017, Green was sentenced according to the plea agreement.

[12] On June 16, 2018, police were dispatched to the apartment of Anitra Beach. She told the officers that Green had opened the door to her apartment and

walked in uninvited. When he entered the apartment, he was yelling and appeared to be looking for someone. He overturned some furniture and walked out. Beach told the officers that Green was behaving like he was drunk and that he smelled of alcohol.

[13] As the officers were leaving Beach's apartment, they received a dispatch of a traffic accident. It was discovered that the driver of the vehicle involved in the accident was Green and that he had driven into a brick mailbox and had a cut on the back of his head and two cuts on his forehead. He was slow to respond to the officers' questions, emitted an odor of alcoholic beverages, had glazed, watery and bloodshot eyes, had slow and slurred speech, had difficulty maintaining his balance while walking, and refused medical treatment. The officers conducted two field sobriety tests, both of which Green failed. The officers then took Green to the jail for a certified breath test, but he provided insufficient breath samples. Thereafter, Green agreed to a blood draw, but, once he arrived at the hospital, he refused to give his consent and stated he wanted to speak with a lawyer. Based upon these incidents, Green was charged on June 29, 2018 in cause number 39C01-1806-F6-649 ("F6-649") with residential entry, a Level 6 felony; operating a vehicle while intoxicated, a Class A misdemeanor; and operating a vehicle while intoxicated, a Class C misdemeanor.[10]

---

[10] Ind. Code § 9-30-5-2(a).

[14]   On August 6, 2018, in F5-754, the State filed a petition for a fifteen day no bond detention of Green, followed on August 10 by a petition to revoke Green's community corrections placement. The petition to revoke alleged that Green had violated his probation conditions requiring him to obey the law, immediately report any contact with law enforcement, report to community corrections for office appointments, and pay community corrections fees. The State asserted that Green had been arrested and charged with operating a vehicle while intoxicated and residential entry in F6-649, that he had failed to report these new charges, that he had failed to report for his community corrections appointment on July 5, and that he had failed to pay fees in the amount of $2,010.

[15]   On January 29, 2019, Green pleaded guilty, pursuant to a plea agreement, to Level 6 felony residential entry and Class A misdemeanor operating while intoxicated in F6-649, and the State agreed to dismiss the charge of Class C misdemeanor operating while intoxicated. Green also admitted to violating his probation in F5-754. The parties left sentencing to the discretion of the court.

[16]   On March 21, 2019, the court sentenced Green to 365 days on the felony concurrent with 365 days on the misdemeanor in F6-649. For his probation violation in F5-754, the court terminated his probation and sentenced him to serve his entire previously suspended sentence of 1,742 days. The court further ordered that Green serve his sentences in the two causes consecutively. It is from these sentences that Green now appeals.

# Discussion and Decision

## I. Inappropriate Sentence

[17] Green first contends that his aggregate sentence of 365 days for his conviction of both felony residential entry and misdemeanor operating while intoxicated in F6-649 is inappropriate in light of the nature of the offenses and his character.

[18] Although a trial court may have acted within its lawful discretion in imposing a sentence, article 7, sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). Such deference to the trial court's judgment should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character). *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Thus, the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the

question is whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19] A plea agreement that does not provide for an open plea but nevertheless affords the trial court some discretion in sentencing is subject to review under Rule 7(B). *Rivera v. State*, 851 N.E.2d 299, 301-02 (Ind. 2006). Such is the case here, where Green's sentence was left to the trial court's discretion.

[20] To assess whether a sentence is inappropriate, we look first to the statutory range established for the class of the offenses. Here, Green was convicted of a Level 6 felony, for which the advisory sentence is one year, with a minimum sentence of six months and a maximum sentence of two and one-half years, and a Class A misdemeanor, for which the sentence may not exceed one year. Ind. Code §§ 35-50-2-7 (2016), 35-50-3-2 (1977). The court sentenced Green to the advisory sentence of one year on the felony conviction concurrent with one year on the misdemeanor.

[21] Next, we look to the nature of the offenses. Green, drunk and uninvited, entered the apartment of Beach, whom he apparently did not know. He was yelling, and he overturned some of Beach's furniture before leaving her apartment. He then got into his car and drove into a brick mailbox, causing property damage and injuring himself.

[22] With regard to the character of the offender, we observe, as did the trial court, that Green's criminal history is significant. Even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State*, 13 N.E.3d 440, 448 (Ind. Ct. App. 2014), *trans. denied*. Yet, Green's criminal history is far from being considered minor; indeed, the court characterized it as "extensive" and consisting of "an unbroken chain of criminal convictions going back three states to 1990." Tr. Vol. 3, p. 47. Green's documented criminal history spans more than twenty-five years, commencing in New Jersey with possession of cocaine in 1990 and assault and a weapons offense in 1991. From 1995 to 2014 in Delaware he committed two offenses of robbery, four offenses of resisting, reckless/intentional/serious assault, two offenses of loitering for drug related activity, possession of a deadly weapon, burglary of a dwelling, receiving stolen property, and possession of drug paraphernalia. Thereafter, Green was convicted of public intoxication and driving while suspended in 2016 in Indiana, followed by his convictions in 2017 of Level 5 felony criminal confinement and Class A misdemeanor domestic battery in F5-754. Moreover, in addition to his violation of the protective order involving Edwards in F5-754, Green had previously violated a protective order in Delaware.

[23] Indiana Code section 35-38-1-7.1(a)(6) (2015) provides that, in determining a defendant's sentence, the court may consider the fact that the defendant recently violated conditions of probation as an aggravating circumstance. Green committed the offenses in F6-649 while on probation in F5-754, and the trial court found that to be a significant aggravating factor. Further, such is a

significant indicator of poor character. *See Rich v. State*, 890 N.E.2d 44, 54 (Ind. Ct. App. 2008) (determining that defendant's commission of offenses while on probation is "substantial consideration" in assessment of his character), *trans. denied*. Additionally, Green's criminal history reflects that he has committed violations during previous probationary periods.

[24] Green claims that, at the time of sentencing, he had been reformed such that his character did not warrant a one-year sentence. In support of this argument, he points to his medical issue; his maintenance of a substance-free and crime-free life in the months leading up to his sentencing; his continued employment; and his scheduling of future counseling appointments.

[25] In sentencing Green, the trial court responded as follows to his assertion that he was reformed: "So for Mr. Green to testify here today that he's a changed man, the Court disagrees." Tr. Vol. 3, p. 46. The trial court then discussed the factors it found to be mitigating. As requested by Green, the trial court found his medical condition to be a mitigator. It seems Green believes this mitigator should prevent him from serving his suspended sentence, but Green has presented nothing to show that he could not receive treatment for his health condition while he is incarcerated. *Cf. Henderson v. State*, 848 N.E.2d 341, 344-45 (Ind. Ct. App. 2006) (finding no error in trial court's refusal to consider defendant's poor health as mitigator because she failed to present evidence that her multiple health conditions would be untreatable during incarceration).

[26] In addition, the trial court took into account that Green had not had any other violations while he was released and awaiting sentencing. The trial court noted, however, that this finding was tempered by the fact that he was not being monitored or tested during this time so there was no way to verify the validity of his claim. And, as requested by Green at sentencing, the trial court also found his employment history to be a mitigating factor.

[27] The trial court further considered Green's history of substance abuse as a mitigating factor but noted that this factor is diminished by the fact that he has committed violent crimes against people in the past while under the influence of these substances. The trial court also noted that, although Green testified at sentencing about having scheduled some type of counseling appointment in the future, he offered no "proof of his attendance at AA meetings or counseling." Appellant's App. Vol. 3, p. 60. In addition, we note that just a year prior to this incident, the trial court had allowed Green to be released on his own recognizance in order to enter a rehabilitation center. In May 2017, Green graduated from that program and was accepted into a transitional housing unit, which the trial court again allowed in lieu of his return to jail. Despite successfully completing treatment after receiving special accommodation from the trial court to do so, Green squandered the progress he had made by drinking excessively and committing these new offenses in F6-649. Although Green claims that much of his criminal behavior is due to his substance abuse problem, this does not necessarily weigh in favor of a more lenient sentence, especially after having received treatment. *See Hape v. State*, 903 N.E.2d 977,

1002 (Ind. Ct. App. 2009) (trial court did not err in failing to consider defendant's substance abuse as mitigating factor), *trans. denied*; *Bennett v. State*, 787 N.E.2d 938, 948 (Ind. Ct. App. 2003) (holding that defendant's alcoholism could properly have been considered aggravating circumstance), *trans. denied*; *Iddings v. State*, 772 N.E.2d 1006, 1018 (Ind. Ct. App. 2002) ("a history of substance abuse is sometimes found by trial courts to be an aggravator, not a mitigator"), *trans. denied*. In spite of this precedent, the trial court gave mitigating consideration to Green's substance abuse issues.

[28] Although not discussed in Green's brief to this Court, the trial court also found Green's guilty plea to be a mitigating circumstance.

[29] The finding of mitigating circumstances is not mandatory but is within the discretion of the trial court. *Page v. State*, 878 N.E.2d 404, 408 (Ind. Ct. App. 2007), *trans. denied*. Further, the court is not obligated to give the same weight to a proffered mitigating factor as does the defendant. *Id.* Green presents this Court with the same mitigating factors he argued to the trial court. The trial court found these factors to be mitigating, and Green presents no additional information to this Court to support a different result than that reached by the trial court.

[30] Having considered these mitigating circumstances as well as the significant aggravating circumstances of Green's extensive criminal history and his commission of new offenses while on probation, the trial court nevertheless sentenced Green to the lenient, advisory sentence of one year. Green has not

met his burden of presenting compelling evidence portraying in a positive light the nature of the offenses and his character in order to overcome the trial court's sentencing decision.

## II. Sentencing Discretion

[31] Next, Green asserts that the trial court abused its discretion when, upon revoking his probation in F5-754, it ordered him to serve the entirety of his suspended sentence of 1,742 days.

[32] A defendant is not entitled to serve a sentence on probation; rather, such placement is a matter of grace and a conditional liberty that is a favor, not a right. *Davis v. State*, 743 N.E.2d 793, 794 (Ind. Ct. App. 2001), *trans denied*. Further, probation is a criminal sanction for which a convicted defendant specifically agrees to accept conditions upon his behavior in lieu of imprisonment. *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. Ct. App. 2013), *trans. denied*. These restrictions are designed to ensure that probation serves as a period of genuine rehabilitation and that the public is not harmed by a probationer living within the community. *Jones v. State*, 838 N.E.2d 1146, 1148 (Ind. Ct. App. 2005).

[33] Indiana Code section 35-38-2-3(h) (2015) provides that if the court finds a violation of a condition of probation, it may: (1) continue the person on probation, with or without modifying the conditions; (2) extend the person's probationary period for not more than one year; and/or (3) *order execution of all or part of the sentence that was suspended at the time of initial sentencing*. (Emphasis

added). A trial court's sentencing decisions for probation violations are reviewed for an abuse of discretion. *Wilkerson v. State*, 918 N.E.2d 458, 464 (Ind. Ct. App. 2009). An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007).

[34] In support of his argument for leniency, Green relies on several cases where this Court determined the trial court had abused its discretion by ordering a defendant to serve his entire suspended sentence. First, Green cites *Puckett v. State*, 956 N.E.2d 1182 (Ind. Ct. App. 2011), in which the Court determined the trial court abused its discretion by considering multiple improper factors before imposing Puckett's entire previously suspended sentence for his probation violation. Here, however, Green makes no claim that the trial court considered improper factors when it sentenced him for his probation violation; therefore, the reasoning in *Puckett* is inapplicable in this case.

[35] In *Johnson v. State*, 62 N.E.3d 1224 (Ind. Ct. App. 2016), this Court reversed the trial court's order revoking Johnson's community corrections placement and ordering him to serve the remainder of his executed sentence in prison because, among other things, his violation was a minor, technical one. Although Green attempts to rely on *Johnson*, he concedes that his commission of the new offenses in F6-649 is not a mere technical violation. *See* Appellant's Br. p. 15. And we would add that it is also not a minor violation. Thus, *Johnson* is inapplicable here as well.

[36]     Finally, Green suggests he should not have been ordered to serve his entire suspended sentence because, prior to June 16, 2018, he had not previously violated his probation; he admitted to the violation and took responsibility for his actions; he had an ongoing health issue; and, at the time he committed the offenses, he was experiencing a relapse in his battle with alcohol abuse because he was upset over the end of his marriage to Edwards.

[37]     In deciding to order Green to serve the balance of his previously suspended sentence, the trial court considered all of this information and set forth the aggravating and mitigating circumstances as discussed in Issue I., above. On appeal, Green merely restates the factors he proffered to the trial court. He makes no showing of any error by the trial court, and we find none. As his twenty-five-year criminal history demonstrates, he has repeatedly demonstrated his unwillingness to comply with the conditions of his probation and to conform his behavior to lead a law-abiding life. Moreover, he squandered the opportunity to remain alcohol free after the trial court afforded him an opportunity for treatment and rehabilitation in F5-754. Green's history provides nothing to suggest that he will comply with probation conditions in the future. Thus, we cannot say the trial court's decision to order Green to serve his entire previously suspended sentence is clearly against the logic and effect of the facts and circumstances of this case.

# Conclusion

[38]     Considering both the nature of the offenses and the character of the offender and giving due consideration to the trial court's sentencing decision, we are unable to conclude that Green's one-year sentence in F6-649 is inappropriate. Furthermore, we conclude the trial court properly exercised its discretion in ordering Green to serve the entirety of his previously suspended sentence upon revocation of his probation in F5-754.

[39]     Affirmed.

Riley, J., and Bradford, J., concur.